W. L. RUSSELL, *et al.*, v. SARAH C. HALLETT.

1. SURVIVORSHIP, *When no Presumption of.* There is no presumption in law of survivorship in the case of persons who perish by a common disaster.

2. DESCENTS AND DISTRIBUTIONS; *Statute Construed.* If the intestate leave no issue or wife, and if both of his parents are dead, one-half of the estate goes to the heirs of the deceased father, and the other half to the heirs of the deceased mother. (Comp. Laws 1879, p. 380, §§ 20, 21.)

*Error from Chase District Court.*

ACTION in the nature of ejectment, brought by *Hallett* against *Russell* and wife. Trial at the May Term, 1878, of the district court, and judgment for plaintiff. The defendants bring the case here. The facts sufficiently appear in the opinion.

*Gillett & Forde*, for plaintiffs in error.

*Scott & Lynn*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the nature of ejectment, tried before the district court of Chase county, with a jury. The action was commenced originally in Greenwood county. Certain facts were agreed to, and all the evidence produced is incorporated in the record. The facts agreed upon are substantially as follows: The land in controversy was owned by one William H. Hallett, who died January 17th, 1868, leaving a widow, Maria E. Hallett, and three children, named and born respectively as follows: Marietta Hallett, born April 3d, 1858; Charles H. Hallett, born April 20th, 1862; William W. Hallett, born April 8th, 1867. The latter, William W. Hallett, died March 6th, 1868, and the widow, Maria E. Hallett, married one R. A. Hitchcock, July 4th, 1868. In February, 1871, she and her two children, Marietta and Charles H. Hallett, died. The widow, Maria E. Hallett, and her children, continued to occupy the land

from and after the death of William H. Hallett, as their residence and homestead, until the marriage of the widow with Hitchcock, from which time they all so occupied it until the mother and children died, and then Hitchcock was left in possession. Hitchcock deeded the land to W. L. Russell, plaintiff in error, June 14th, 1871. The father of William H. Hallett died in April, 1862. The defendant in error (plaintiff below), Sarah C. Hallett, is the mother of William H. Hallett, and the grandmother, on the father's side, of Marietta and Charles H. Hallett.

The jury, in answer to certain questions, returned the finding that Maria E. Hitchcock and her children, Marietta Hallett and Charles H. Hallett, died in the same calamity and all at the same time, in Fall river, Greenwood county, in this state, on the morning of February 24th, 1871. The defendant in error, Sarah C. Hallett, claims that she inherited the property from her grandchildren, Marietta and Charles' H. Hallett—both of the parents of the latter being dead. On the part of the plaintiffs in error, it is contended that R. A. Hitchcock inherited all the property, and that W. L. Russell, at the commencement of the action, was the owner of it under the conveyance to him by the deed of Hitchcock of June 14th, 1871.

The first question presented is, whether Maria E. Hitchcock, the mother of Marietta and Charles H. Hallett, survived her children? Counsel of plaintiffs in error claim the court erred in its direction to the jury concerning survivorship, and that the jury arbitrarily disregarded evidence proving conclusively that the mother survived her children. It is contended by such counsel that the presumption of fact is that the children being of tender years, perished first. Upon this point, the court instructed the jury:

"That when several persons lose their lives by the same event, there is no presumption of law as to survivorship based upon age or sex, nor is there any presumption that they all died at the same moment. The law makes no presumption on the subject, but leaves the survivorship to be

determined as a fact by evidence, and the burden of proof is on the party asserting the affirmative."

This is correct, and the court committed no error in thus instructing. In *Newell v. Nichols*, 75 N. Y. 78, the law of survivorship has been examined very recently, and the doctrine above stated fully sustained. That was a case of a mother, her married son, and his two children, aged two and seven years, who perished by drowning on the steamer Schiller, when that vessel was wrecked in 1875. Church, C. J., says:

"It is not impossible for two persons to die at the same time, and when exposed to the same peril under like circumstances, it is not as a question of probability very unlikely to happen. At most, the difference can only be a few brief seconds. The scene passes at once beyond the vision of human penetration, and it is as unbecoming as it is idle for judicial tribunals to speculate or guess whether during the momentary life-struggle one or the other may have first ceased to gasp."

In the absence of other evidence, the fact as to who was the survivor, where several persons perish in the same catastrophe, is assumed to be unascertainable, and property rights are disposed of as if death occurred to all at the same time. While therefore it is correct to say the law makes no presumption on the subject, the practical consequence is nearly the same as if the law presumed all to have perished at the same moment. *In re Hall*, 8 Ch. L. N. 68; (Cent. L. J., No. 20, vol. 9, 381, 382;) *Newell v. Nichols*, 19 N. Y. Sup. Ct. 604; *Coye v. Leach*, 8 Metc. (49 Mass.) 371.

The testimony of Jonathan Hodgson, which counsel claim was disregarded, was to the effect that on February 24th, he was sleeping in a cabin near Fall river, about nine rods from where Mrs. Hitchcock was found drowned; that he was acquainted with her voice, and that he was awakened on the morning of the 24th by hearing Mrs. Hitchcock calling out: "Mr. Hodgson, save me! I am drowning!"; that his first impression was that he was dreaming; that he dressed himself, told his son to get up and make a fire in the furnace;

that he then went outside of the cabin, and immediately returned, exclaiming, "The Hitchcock family must be all drowned!" as he had discovered Hitchcock's wagon on the opposite side of the river in the water, turned upside down, and no one in sight; that he heard no calls from any other than Mrs. Hitchcock, and that the sound of her voice proceeded from the direction in which the wagon was found in the river.    It is attempted to be assumed from this, that as the children did not call for help, or that as Mr. Hodgson did not hear any calls from them, they were not alive when Mrs. H.'s cries were heard.    The testimony does not conclusively establish what is claimed.    Being younger and lighter, the children might have been swept by the current of the river further down (such was the fact as clearly disclosed by the evidence), and their calls, if any, might not have reached him by reason of distance.    Again, the children may have called for help when their mother did, but her voice being stronger, was the only one heard.    Many theories present themselves, but it is useless for us to speculate about the matter.    The issue was fairly submitted to the jury, the instructions thereon were properly given, the jury were the judges of the facts and all the circumstances attending the drowning of the mother and the children, and we perceive no reason to overturn the finding on this point.    It is however a waste of time to discuss further these findings, and we have only considered them to state the law applicable thereto, as in our view of the law of descents and distributions, a new trial must be awarded, owing to the misdirection of the court in regard to the amount of land the defendant in error inherited, if all the family perished at the same moment.    As to this, the court instructed: "If you find that all perished at the same time, then the half-interest in the homestead passed or ascended to the grandmother, and the interest of the wife passed to her husband, and in this case plaintiff (defendant in error) is entitled to recover an undivided half-interest in the property in question."

When William H. Hallett died, January 17th, 1868, one-

half of his real estate went to his widow, and the other half to his children. When William W. Hallett, minor, died, March 6th, 1868, an undivided one-twelfth interest went to his mother, Maria E. Hitchcock, and the balance to his brother and sister. (Comp. Laws 1879; p. 380, § 21.) When the children and their mother perished, February 24th, 1871, Mrs. Hitchcock's undivided interest, being one-half ($\frac{1}{2}$) plus one-twelfth ($\frac{1}{12}$), went to her surviving husband, and the two children's interest, being two-sixths ($\frac{2}{6}$) plus one-twelfth ($\frac{1}{12}$), went to the heirs of both father and mother equally. The statute provides: "If both parents be dead, it shall be disposed of in the same manner as if they, or either of them, had outlived the intestate, and died in the possession and ownership of the portion thus falling to their share, or to either of them, and so on through ascending ancestors and their issue." (Secs. 20 and 21, *supra.*) The heir of the mother was her surviving husband. The heir of the father was his mother (Mrs. Sarah C. Hallett), the defendant in error. Thus, R. A. Hitchcock inherited one-half of the children's interest from his dead wife, and the grandmother, Sarah C. Hallett, also inherited one-half of the children's interest. Hitchcock would be entitled to one-half, plus one-twelfth, plus one-sixth, plus one twenty-fourth, aggregating nineteen twenty-fourths of the property; and Sarah C. Hallett would be entitled to only five twenty-fourths. The deed of Hitchcock to Russell, of June 14th, 1871, conveyed to the latter nineteen twenty-fourths ($\frac{19}{24}$) of the land. The instruction concerning the law of descents and distributions was therefore erroneously given. If all the family perished at the same moment, only five twenty-fourths ($\frac{5}{24}$) interest in the homestead passed or ascended to the grandmother.

As all the facts in the case were not agreed upon, and as the court erred in its direction concerning the descent and distribution of the property, we cannot direct the court below to enter judgment, but must award a new trial.

The judgment of the district court will be reversed, and case remanded.

All the Justices concurring.