28001. DURHAM IRON COMPANY *v.* DURHAM.

DECIDED MARCH 7, 1940. REHEARING DENIED MARCH 23, 1940.

*Fort, Fort & Fort, Vance Custer,* for plaintiff.

*J. A. Hixon, Jack Murr,* for defendant.

SUTTON, J. On March 6, 1939, there was issued by the clerk of the superior court of Sumter County a fi. fa., directed to the sheriff of said county, his lawful deputies, etc., commanding that of the goods and chattels of Howe Durham, trading under the name of Durham Iron Company, they cause to be made the sum of $1487.50 which Mrs. J. J. (Sue) Durham recovered against said Howe Durham under award of the "Industrial Court of Georgia;" the said sheriff being directed to have the said sum of money before the superior court of Sumter County on the fourth Monday in May, 1939. On March 7, 1939, J. C. McArthur, deputy sheriff,

made an entry upon the fi. fa. as follows: "After diligent search, and interviewing the defendant Howe Durham, I find no property belonging to Howe Durham with which to levy the within fi. fa., and he states that he has no property except ten (10) shares of stock in the Durham Iron Company, Incorporated, and that this is up as collateral with the company for overdrafts or any indebtedness of his to the company, now or in the future; have served Howe Durham with notice of the order of the superior court to issue execution on the award of the Industrial Court of Georgia. This 7th day of March, 1939." On March 29, 1939, the fi. fa. was levied by L. E. Jennings, deputy sheriff of Sumter County, on a certain described "State Commander" Studebaker automobile and a certain described "President" Studebaker automobile, as well as twenty shares of the capital stock of the Durham Iron Company, Incorporated, par value $100, the return reciting "Notice of levy to said Durham Iron Company, Incorporated, given as required. All levied on as the property of Howe Durham, to satisfy" the execution here involved, and "Property levied on pointed out by plaintiff in fi. fa." To this levy the claimant corporation, plaintiff in error herein, interposed its claim affidavit in which its secretary and treasurer, John P. Durham, swore that the two automobiles levied on were not the property of the defendant in fi. fa. but were the property of the claimant, and that it had never issued to the defendant in fi. fa. twenty shares of its capital stock but had issued to him ten shares, represented by stock certificate No. 2; that on June 1, 1938, the defendant in fi. fa. "did pledge, transfer, and assign the ten shares of stock issued to him to the Durham Iron Company, as security for his indebtedness to the company, said indebtedness being in the amount of $1898.02 and evidenced by a promissory note signed by defendant in fi. fa. on the 1st day of June, 1938, and that said indebtedness or any part of it had never been paid, and that same is still outstanding against said Howe Durham, and said Howe Durham has become indebted in the sum of $2144.64 additional, by reason of overdrafts since June 1, 1938, and said company still holds said ten shares of stock as security for said indebtedness, and claims title to said stock, as security therefor."

On July 17, 1939, the plaintiff joined issue with the claimant, and further set up that the claim was made for the purpose of

delay only, and for which reason the plaintiff claimed damages against the claimant. When the case came on for trial the admission in evidence of the fi. fa. was objected to by the claimant on the grounds that it purported to have been issued on a judgment and decree of the "Industrial Court of Georgia," and that there is no such court in this State, and it not appearing from the fi. fa. that it was based on any valid judgment of the superior court, which was a necessary prerequisite in order to authorize the issuance of a fi. fa. on the award of the "Industrial Board of Georgia," and that it appeared from an entry of the deputy sheriff that he had made inquiry of the president of the claimant corporation for a disclosure of the number of shares of the corporation owned by the defendant in fi. fa., which demand disclosed that the defendant held only ten shares whereas the levy was upon twenty shares. The court overruled the motion of the claimant that the portion of the levy which purported to levy upon twenty shares of the company be dismissed.

J. P. Durham, secretary and treasurer of the claimant corporation, testified, that he had lived in Bainbridge, Georgia, about six years and was engaged in the scrap iron business; that in June, 1937, he put into the corporation formed by his father, Howe Durham, viz., the Durham Iron Company, everything he had, scrap iron, machinery, and equipment; that prior to the incorporation his father had nothing to do with the witness's business at Bainbridge and that the witness had never heard of any claim on the part of the plaintiff against his father at that time, and there was no claim on her part at the time of the incorporation; that in the incorporation of Durham Iron Company forty shares of stock were issued to his mother, ten shares to his father, forty shares to himself, and ten shares to T. L. Durham of Cordele, Georgia, an uncle of the witness; that the defendant in fi. fa. had never held more than ten shares of stock in the corporation, which shares were issued to him on June 19, 1937, the date the corporation began to function; that the defendant in fi. fa. had become indebted to the corporation by overdrafts to the extent of $1898.02 and, at the request of the witness, as secretary and treasurer of the corporation, the defendant in fi. fa. executed and delivered to the corporation his note, dated June 1, 1938, for that amount, and also transferred to it his certificate for ten shares of stock in the corporation; that

the defendant in fi. fa. had purchased the two automobiles levied on and had executed title-retention contracts to the seller, Trippe Motor Company, which were by them assigned to Automobile Financing Inc., and that the instalment payments had been paid from month to month by drafts drawn on the claimant corporation, the last draft being drawn February 17, 1939, when the corporation paid the balances due on the automobile contracts and had Automobile Financing Inc. transfer the title-retention contracts to it; that the indebtedness of the defendant in fi. fa. on overdrafts between the date of his note of June 1, 1938, and the date of the trial had increased by the amount of $1761.60, and that at the time the witness had the claimant corporation take up the automobile contracts by transfer on February 17, 1938, he knew that Mrs. Sue Durham, the plaintiff, was suing Howe Durham and would soon have a judgment; that in having the papers transferred to the corporation his purpose was to further secure the defendant in fi. fa.'s indebtedness to it; that there might have been some delay before the corporation was complete by the payment for all of the stock, but not as much as a month or two, and that a deed to the corporation covering real estate occupied by it at Americus and dated July 12, 1937, was given by T. L. Durham in payment for his ten shares, and that these were subsequently transferred to Mrs. Howe Durham, but witness did not know the consideration between the parties; that no money was paid to the witness as secretary and treasurer of the corporation, but that he had a letter from Howe Durham, the president, instructing him to issue the stock, as hereinbefore enumerated, as the different stockholders had paid money or land and equipment for same; that the witness paid for his stock with land and buildings and equipment and everything he owned, but turned in no money; that Howe Durham paid for his ten shares with cash; that T. L. Durham paid for his ten shares with lands and buildings; that he did not personally know that his mother paid for her stock of forty shares, but that his father, Howe Durham, informed him that she had paid cash; that a cashier handled cash paid into the corporation and that the witness, as secretary and treasurer, did not actually receive it; that the defendant in fi. fa. was overdrawn with the corporation at a time when the other stockholders knew that he was having trouble with the plaintiff in fi. fa., and the corporation was advancing money

to pay on the automobile contracts at a time when the corporation and its stockholders knew that the defendant in fi. fa. was having litigation with the plaintiff in fi. fa., and that these overdrafts were effected by him without any authority from the board of directors and while president of the corporation; that the witness and his father drew on the corporation for such funds as they needed and the withdrawals were charged to their respective accounts, and the father was overdrawn but the witness was not; that the salary of each of them was $4800 per year, fixed by them in concert and without any specific authority from the board of directors; that the principle reason for incorporating the business of himself and that of his father was to facilitate the handling of a volume of business, whereas theretofore neither knew how much the other sold or what help one could render the other on a contract while acting independently; that the amount paid on the "President" Studebaker automobile contract was $674.24 and the amount paid on the "Commander" Studebaker automobile contract was $331.99, these amounts representing the consideration for the transfer of the contracts to the corporation by Automobile Financing Inc.; that the cars purchased were new and the price of one was $1100 and the price of the other $1400; that one of them was used exclusively by Mrs. Howe Durham and the other by the witness's younger brothers and sisters and they were never used in the business of the corporation; that the transfer was made to the corporation by the finance company at the request of the witness for the purpose of preventing a levy of the judgment obtained by Mrs. Sue Durham in the superior court against Howe Durham; that he felt that the corporation was entitled to protection and told his father to effect the transfer; that the purpose was to secure the overdraft of his father with the corporation against an execution that he knew Mrs. Sue Durham would have or did have at that time, and he asked the finance company to make the transfer; that he knew the property was subject to be levied on, and that to protect the overdraft of the corporation the balance on the contracts was paid off, and that if the witness said before noon that this was done to "prevent a levy of the judgment" and now says that it was to "secure the corporation," the witness says "they would both be in a sense correct."

I. B. Small, tax-commissioner of Sumter County, Georgia, testi-

fied that no property was returned by Howe Durham for 1937, and that there was no return for Mrs. Howe Durham in 1935 or 1936; that she made no returns prior to 1937 and 1938 but made returns in those years; that Mrs. Durham was assessed in 1936, and an assessment was made against Howe Durham by the board of equalizers in that year; that 1937 was the first year Durham Iron Company made a return.

T. R. Allen, brother-in-law of the plaintiff, testified that he knew Mrs. Howe Durham and knew that she had never been engaged in business since she moved to Americus, and he knew of no source of income that she had since she had been there, but that he knew nothing of her personal affairs. The plaintiff testified that she was the widow of Joe Durham, who was the son of Howe Durham and who had died in October, 1935, in Florida; that she did not make claim promptly for compensation and Howe Durham told her that her only chance of getting anything would be to go to Florida; that he had hired her a lawyer down there, and she hired a lawyer and for two years prosecuted a claim in Florida; that her deceased husband was a laborer in his father's business, fooling with scrap iron and hauling for his father, and she had never received compensation on his death; that she first discovered in October, 1936, that she had a claim against Howe Durham under the workmen's compensation act, and filed her claim just as quickly thereafter as she could, and has prosecuted it continuously since then, her claim having been filed on October 15, 1937; that T. L. Durham was in possession of and operating the scrap-iron business in Americus before Howe Durham moved there, after which Howe Durham operated it himself; that Mrs. Howe Durham did not at that time have any property and income within the knowledge of the witness; that the Durham family lived in a house by the junk yard after the death of the husband of plaintiff, but about six months later Howe Durham moved to McGarrah Street in Americus, since which time the family has been living much better than they did prior to the death of the plaintiff's husband.

The following documentary evidence was introduced: The original fi. fa. above mentioned. Deed from T. L. Durham to Durham Iron Company, dated July 12, 1937, conveying land in Americus about which the witness John P. Durham had testified and con-

cerning which there was some evidence that T. L. Durham had returned this property for taxation prior to the incorporation of Durham Iron Company. Promissory note, dated June 1, 1938, executed by Howe Durham to Durham Iron Company for $1898.02 with transfer of stock certificate for ten shares of stock in said corporation which had been issued on June 19, 1937. Retention-title contract executed by Howe Durham on July 27, 1938, to Trippe Motor Company on one State Commander Studebaker automobile, securing a balance of $331.99 purchase-money in deferred payments evidenced by an instalment promissory note of even date payable $27.73 per month, the said contract being duly recorded, and upon which there appeared an assignment for value by Trippe Motor Company to Automobile Financing Inc., dated July 28, 1938. Attached to the contract was an assignment by Automobile Financing Inc. for value to Durham Iron Company, dated February 17, 1939. Retention-title contract executed by Howe Durham on November 23, 1937, to Trippe Motor Company on one President Studebaker automobile, securing a balance of $674.24 purchase-money in deferred payments of $37.45 per month, evidenced by an instalment promissory note of even date, the said contract being duly recorded, and upon which appeared an assignment for value by Trippe Motor Company to Automobile Financing Inc. under date of November 24, 1937. Attached to the contract was an assignment from Automobile Financing Inc. to Durham Iron Company, dated February 17, 1939. "Authorized signature card," authorizing the Citizens Bank of Americus to honor checks drawn by Sarah B. Wood on the account of Durham Iron Company. Nineteen drafts drawn on Durham Iron Company in payment of the title-retention contracts above mentioned and held by Automobile Financing Inc., these drafts being dated from November 23, 1937, to February 17, 1939, and aggregating $1006.23. The last two drafts, both under date of February 17, 1939, being drawn by Automobile Financing Inc. on Durham Iron Company, one for $148.68 and showing "for balance owing on" the President Studebaker automobile, and the other for $163.92 for "balance owing on" the Commander Studebaker automobile. Stock register of Durham Iron Company, showing issuance of stock certificates on June 19, 1937, as follows: I. M. Durham, forty shares; Howe Durham, ten shares; J. P. Durham, forty shares; T. L. Durham,

ten shares; the register showing a transfer of the ten shares of T. L. Durham to Mrs. Howe Durham on April 9, 1939. Ledger account of Howe Durham, beginning June, 1937, and ending May 31, 1939, showing an overdraft of $1898.02 on May 31, 1938, and a credit by note, dated June 1, 1937, for that amount, and an overdraft on May 31, 1939, of $1761.60 in addition to the overdraft of $1898.02 covered by the note. State and county tax returns of Mrs. Howe Durham for the years 1937, 1938, and 1939, each showing "Home, $1200; automobile, $450; household furniture, $250." State and county tax returns of Howe Durham for the years 1937 and 1938, returning a poll tax but no property. State and county tax returns of T. L. Durham for the years 1935 and 1936, showing the same real estate acquired in Americus by Durham Iron Company and valued for taxation at $2100, merchandise $200, cars and trucks $825. State and county tax returns of Durham Iron Company for the year 1937, showing the same real estate as previously returned by T. L. Durham as $2100, merchandise $500, cars and trucks $1200.

The jury returned a verdict in favor of the plaintiff, finding the property levied on subject to the levy and awarding $300 damages. The claimant moved for new trial on the general grounds and by amendment added numerous special grounds. The court overruled the motion, and the exception is to that judgment.

■ In this court the defendant in error filed a written motion to dismiss the bill of exceptions for certain stated reasons in which we find no merit. Inasmuch as no question deserving special mention is presented, and the judgment of the trial court is being affirmed, it is not deemed necessary to enter into any detailed discussion to show wherein the motion to dismiss is, as we hold, without merit.

■ It is contended by the claimant, plaintiff in error herein, that the property here involved was not subject to levy as belonging to Howe Durham, defendant in fi. fa., and that in good faith it had acquired title to ten shares of stock which had been issued to Howe Durham and by him transferred to the claimant to secure an indebtedness due by him and also had acquired title to the two automobiles in question; that the other ten shares of stock levied on had never been issued or transferred to Howe Durham, and that the automobiles, while originally purchased by him, had been paid

for in part by its own funds to the extent of $1006.23 by drafts in favor of Automobile Financing Inc., transferee of the title-retention contracts under which the automobiles were sold by Trippe Motor Company, and that upon payment of the last monthly instalments and to secure the indebtedness of Howe Durham it caused the title papers to be transferred to it; that in all of these transactions and in forming the corporation it acted in entire good faith and without any notice of intention on the part of Howe Durham to hinder, delay, or defraud the plaintiff in any claim against him and was not a party thereto.

The issuance of the execution against Howe Durham and the claim filed by the plaintiff in error followed certain litigation between the plaintiff in execution and Howe Durham as reported in *Durham* v. *Durham,* 59 *Ga. App.* 438 (1 S. E. 2d, 207). As shown in the reported case, Mrs. Joe J. Durham was the widow of Joe J. Durham who met his death in Florida on October 26, 1935, while hauling a load of scrap iron for his father and employer, Howe Durham, then doing business as Durham Iron Company. On October 15, 1937, she filed with the Industrial Board of Georgia a claim for compensation and subsequently an award was made in her favor. The defendant appealed the case to the superior court of Sumter County, where the award was affirmed. The defendant then brought the case to this court, and on February 8, 1939, the judgment of the superior court, which the record shows was rendered on July 18, 1938, was affirmed by this court. It appears from the record in the present case that in June, 1937, the Durham Iron Company was incorporated, ten shares of stock being issued to Howe Durham, ten shares to his brother, forty shares to his son and forty shares to his wife; that on June 1, 1938, Howe Durham transferred to the corporation the ten shares which had been issued to him; that on February 17, 1939, the title-retention contracts were transferred to Durham Iron Company; that on March 6, 1939, the execution in the present case was issued; that on March 29, 1939, levy was made on twenty shares of stock of Durham Iron Company as the property of Howe Durham and notice thereof given to the corporation, all without any disclosure by the corporation as to the number of shares owned by him, and included in the levy were the two Studebaker automobiles in the possession of Howe Durham; that on March 31, 1939, Durham Iron Company filed a

claim to the two automobiles and to the ten shares of stock which had been issued to Howe Durham and subsequently transferred to the corporation, the corporation at the same time executing its claim bond and forthcoming bond; that on July 17, 1939, the plaintiff joined issue with the claimant and further set up that the claim was made for the purpose of delay only, and for which reason plaintiff claimed damages against the claimant.

We think that under the law and the evidence the jury was authorized to find against the claimant and to award the damages named in the verdict. The Code, § 28-201, on which the plaintiff relies, declares: "The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz: . . (2) Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid." "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." § 37-706. Where a conveyance is made with intent to hinder, delay, or defraud a creditor, and this fact is known to the grantee, or he has reasonable ground to suspect that such was the intention of the grantor, the conveyance is void as against the creditor, even though it is given on a valuable consideration. *McLendon* v. *Reynolds Grocery Co.*, 160 *Ga.* 763, 765 (129 S. E. 65). While it is earnestly contended by the plaintiff in error that the evidence shows that in what it did in effecting transfer of title it was acting in good faith and within its rights and without notice of any intention on the part of Howe Durham to hinder, delay, or defraud the plaintiff, there were facts and circumstances from which the jury could find to the contrary. Notwithstanding the testimony of the secretary and treasurer of the claimant that the transfer of title to the two automobiles was made for the purpose of protecting the corporation's account against Howe Durham, he admitted on cross-examination that he and Howe Durham, his father, president of the corporation had conferred together as to how the plaintiff's efforts to collect an award of compensation against him might be forestalled, and that the transfer of the automobiles was

equally for the purpose of assisting his father to defeat the plaintiff. When the title papers were transferred on February 17, 1939, her award of compensation by the Industrial Board of Georgia had already been affirmed by a judgment of the superior court of Sumter County. Certainly Howe Durham knew this, and the jury could reasonably infer that the son, acting in concert with him to defeat the plaintiff, also knew of the court proceeding. These two, according to the evidence, were the officers of the corporation responsible for its acquisition of title to the automobiles, and their knowledge of the judgment against Howe Durham and his efforts to avoid its effect were imputable to the claimant. Even if the transfer had been made for the additional purpose of securing his indebtedness, it was void as against a creditor when taken with notice of the fraudulent intention. *Palmour* v. *Johnson,* 84 *Ga.* 91- (10 S. E. 500).

The contention of the plaintiff in error that the principles of law here announced can have no application in the present case because the transfer was made by a finance company which was entirely innocent is without merit. That company was merely a conduit through which Howe Durham, by order or by acquiescence, attempted to transfer his rights to the corporation. The contracts had not been assigned to the corporation, and when the payments were made for him, no matter by whom, he became the real owner of the property. The corporation acquired no defensible title, and was left only with a claim against Durham, the real owner, for the amount advanced. The further contention of plaintiff in error that the property can not be made subject to the levy without the plaintiff reimbursing the corporation for the amount it advanced is without merit in a case where the transaction may be found to be fraudulent. While the transfer of the ten shares of stock was made on June 1, 1938, prior to the time the plaintiff obtained an award of compensation against Howe Durham, she had filed her claim in this State on October 15, 1937, and the facts and circumstances surrounding his dealings with her at the time she was seeking, at his direction, to prosecute her claim in Florida instead of in the State of his residence, together with his conduct thereafter, and with which the son, the secretary and treasurer of the claimant corporation, might reasonably have been found to be acquainted, were such as to authorize the jury to find that the

transfer was made for the purpose of hindering, delaying, or defrauding the plaintiff. It is made to appear that at the time of the transfer of the stock certificate he was left insolvent. He returned no property for taxation in 1937 or 1938, although he drew his salary of $9600 for two years, and the purchase of two automobiles was accomplished by the payment of drafts by the corporation of which he was president. By this process and by other withdrawals he created an indebtedness against him in the corporation, and then acquiesced in or directed the transfer of title to the automobiles for the purpose, as the jury might find, to deprive the plaintiff of any opportunity to make her award out of any property in his name. In taking title by means of transfers of the stock certificate and the title-retention contracts, the corporation was acting through officers who were engaged in an effort to forestall the plaintiff, and who, as the jury might find, brought about the transfers as a part of that plan. Their knowledge of the intention of Howe Durham in the premises was imputable to the corporation. The verdict of the jury was authorized under the law and the evidence. The court properly entered judgment in accordance therewith, and did not err in ordering the execution to proceed and in overruling the general grounds of the claimant's motion for new trial.

■ One of the special grounds of the motion for new trial complains that the court erred in charging the jury that the burden of proving that its claim was not filed for delay only rested upon the claimant, the basis of such objection being the language of the court that "The burden in the case is on the claimant corporation to *make out its case* by a preponderance of the evidence." (Italics ours.) This excerpt of the charge is not the equivalent of charging that the burden of proving that the claim *was not filed for delay only* rested upon the claimant.

(*a*) Another ground complains that the court erred in admitting the execution in evidence, it being contended that it purports to have been issued upon an award by the "Industrial Court of Georgia," that there is no such court in Georgia, and that if it be taken to mean the Industrial Board of Georgia the execution could not legally issue until the award of compensation by such board had, in accordance with Code, § 114-711, been made the judgment of the superior court of Sumter County. The method of enforcing an

award of compensation by the Industrial Board is by filing in the superior court of the proper county a certified copy of the award. The proceeding is not a separate suit, but merely a continuance of the original proceeding. *Camp* v. *U. S. Fidelity &c. Co.*, 42 *Ga. App.* 653 (157 S. E. 209). The workmen's compensation act does not provide for notice to the employer of, or for a hearing on, the proceeding in the superior court, and the judgment entered "shall have the same effect, and all proceedings in relation thereto shall thereafter be the same, as though said judgment had been rendered in a suit duly heard and determined by said court." *Taylor* v. *Woodall,* 183 *Ga.* 122, 125 (187 S. E. 697). The purpose of the proceeding is to obtain an adjudication in the superior court that the plaintiff is entitled to recover the sums awarded by the Industrial Board and thus to have a judgment upon which an execution may issue. By the record in *Durham* v. *Durham,* supra, of which this court will take notice, it is shown that Howe Durham, the employer, appealed to the superior court of Sumter County from the award by the Industrial Board of compensation to the present plaintiff. The judgment of the superior court affirming the award of compensation was by this court affirmed. The adjudication in the superior court in favor of the plaintiff was, for the purpose of an execution and for all purposes, as effective as if the plaintiff herself had filed in that court a certified copy of the award and had had a judgment entered thereon. Hence, the issuance of the execution here involved was supported by a valid judgment which affirmed the award of compensation by the Industrial Board, and the reference to that board as the "Industrial Court of Georgia" is not of such consequence as to render the fi. fa. invalid. The court did not err in admitting the same.

(*b*) Another ground complains that the court erred in admitting evidence of the levy upon twenty shares of the stock of the claimant, it being contended that the defendant in fi. fa. had never been issued more than ten shares of stock, and that the court placed a burden upon the claimant of proving a greater contention than it had made. This objection is without merit. In the first place, this point could not be raised by the claimant, and, secondly, the ten shares not issued to the defendant in fi. fa. were not claimed by the corporation, and certainly the admission in evidence of levy thereon was not harmful to the claimant for any reason assigned.

(*c*)   Another ground complains that the court erred in admitting in evidence the tax returns of the wife of the defendant in fi. fa. for the years 1937, 1938, and 1939, it being contended that they did not embrace any of the property levied on and were irrelevant and immaterial as proving title thereto, and even if evidence of title were not admissible because the returns were originals and not certified copies.   It was not contended that the wife of the defendant in fi. fa. held title to the ten shares of stock issued to him, and the returns were not introduced for that purpose, and could not reasonably have been regarded by the jury as introduced for that purpose.   If considered by the jury on the question of title to the other ten shares levied on, the introduction of the returns was not harmful to the claimant who asserted no title thereto, and the objection is not good for any reason assigned.

(*d*)   Other special grounds complain of various portions of the charge of the court.   It is sufficient to say that a careful examination of the charge shows that the court fairly, fully, and properly submitted all issues to the jury, and an extended discussion would be unprofitable and unduly extend this opinion.

■   From what is said above it follows that the court did not err in overruling the claimant's motion for new trial.

*Judgment affirmed.   Stephens, P. J., concurs.*

FELTON, J., dissenting.   If the original retention-title contracts were bona fide and free from fraud, and there is no evidence tending to show that they were not, any person, natural or artificial, would have had the right to buy them and take a transfer whether with good intention or fraudulent intention.   I think the jury would have been authorized to find that all of the payments made on the automobile notes except the last two were in fact payments by Howe Durham himself, and that they should have been credited on the notes.   I don't think that this question should be confused with the transfer of the notes and whether the transfers were fraudulent.   The question of the transfer and the question of how much balance there was due at the time of the transfers are two very different things.   It is undisputed that *at the time* of the last payments of instalments of the notes the corporation obtained the transfers of the notes.   Regardless of what it had been doing as to the other payments, it certainly had the right to refuse to continue to advance money to Howe Durham without security, and to obtain

a transfer of the notes to secure the last instalments paid with its own money. There is no evidence that the last instalments were paid with Howe Durham's money. · I think the verdict was unauthorized as to the automobiles because the title was in the corporation and the last two instalments were not tendered to it before the attempted levy.

There was no valid levy as to the stock because the levy does not divulge what stock was levied on. The filing of a claim by the corporation to ten shares cured that defect so far as the particular ten shares were concerned. The issue as to the other ten shares was not in the case. Nobody claimed it because nobody could tell who should claim it, not knowing whose stock was levied on. The corporation did not and could not claim it for its owner. It was therefore error for the court to admit in evidence the tax returns of Mrs. Howe Durham. She was not a party claimant, and the question as to whether she owned the ten shares to which no claim was filed was not being adjudicated in the trial. The admission of this evidence might easily have been prejudicial to the claimant. I think a new trial should be granted.