848

[Civ. No. 5703.   Fourth Dist.   Dec. 9, 1957.]

DELILAH METZ, Respondent, v. VICTOR MALLEY et al., Appellants.

Benjamin J. Goodman for Appellants.

Merrill Brown for Respondent.

BARNARD, P. J.—This is an action for damages based on misrepresentations made by the defendant husband in pur-

chasing a house from the plaintiff. On March 28, 1955, Mrs. Metz and Mr. Malley entered into an agreement under which she agreed to sell him her house in Palm Springs for $16,500, and he agreed to give her a $5,500 trust deed on the house and to assign to her a note with an unpaid balance of about $11,000 which was secured by a chattel mortgage on the equipment in a restaurant in Glendale. The parties opened an escrow at a bank on April 1, 1955. Various differences arose between them which were finally settled and the escrow was completed on May 24, 1955, at which time the plaintiff received an assignment of the chattel mortgage. Shortly thereafter there was a default in payments required under the chattel mortgage, and the plaintiff discovered that the restaurant was not being operated. The plaintiff thereupon gave notice of a sale of the mortgaged equipment at private sale, as permitted by the mortgage terms, which sale was set for July 1, 1955. No other bidders appeared and Mrs. Metz bought in the equipment for $500. On August 8 she sold it to a third party for $1,750.

The plaintiff then brought this action alleging, among other things, that the defendants had misrepresented the value of this chattel mortgage in that they had stated and represented to her (1) that the personal property secured by said chattel mortgage was worth in excess of the then unpaid balance of principal and interest of said note, and (2) that the maker of said note was successfully operating said restaurant and intended to continue to operate it. The prayer was for damages in the sum of $9,364, the difference between the amount that would have been due on the chattel mortgage and the $1,750 received by the plaintiff. After a trial, the court found that these false representations had been made, and found that the plaintiff had been damaged in the sum of $9,264 after allowing a credit for $100 which had been received by the plaintiff. The defendants have appealed from the judgment which followed.

It is first contended that the evidence does not sustain the finding that these statements and representations were false. While it is conceded that the second of these representations was actually made it is argued that both of them were true on March 28, 1955; that on that date the restaurant equipment was actually worth in excess of the then unpaid balance of the note and chattel mortgage; and that the maker of said note (Sholder) was then successfully operating said restaurant and intended to continue to operate it. It is further argued that the uncontradicted evidence established

that the fair market value on March 28 of the mortgaged equipment, when used in the operation of a restaurant as a going business, was in excess of $11,064; that the first representation made by the defendants had reference to the value of the chattel mortgage as a part of a going business; and that the truth of the second representation is shown by the fact that Sholder, who was then operating the restaurant, told two friends of the plaintiff on April 21, 1955, that he had a three-year lease and expected to keep the place and make the chattel mortgage payments promptly.

There was considerable conflicting evidence relating to the truth of these representations at the time they were made, including the contrary inferences which could well be drawn from the evidence. The history of this restaurant and this equipment is interesting in the light of both of these representations. A Mr. Mushrow had the original lease and originally opened the restaurant in May, 1952. He operated it from May to September of that year and then went into bankruptcy and the restaurant was closed. Mr. Malley testified that he acquired the lease from Mushrow in December, 1952; that he had loaned Mushrow $3,000 with which to start the restaurant; that "It was a case of either dropping the $3,000 or going into it deeper, and I decided that I would take it over"; that he did not buy the equipment through the bankruptcy; and that, including his $3,000 loan and the unpaid balances which he had to pay off on various items, he had paid about $10,000 for the equipment. Malley, who was a real estate broker, reopened the restaurant in December, 1952. and operated it until February, 1953. He then subleased to one Rezuki who operated the restaurant for three or four months. Rezuki then sold the restaurant to one Falco who operated it until about April, 1954. Falco then sold the restaurant to two women who "lasted" two or three months. They did not sell the restaurant or equipment but just moved out. The restaurant was closed from July to December, 1954. In November, 1954, Mr. Malley listed the restaurant for sale with a Mr. Sholder, a broker who was associated with a firm of business brokers. In December, 1954, Sholder took over the restaurant, paying Malley $1,000 in cash and giving him the chattel mortgage here in question for $11,500 payable $150 a month. Sholder operated the restaurant for about four months, and paid some three monthly payments on the chattel mortgage. On April 1, Sholder asked for Malley's consent to a transfer of the sublease, and then listed the restaurant

for sale with the firm of business brokers with which he had been employed. As a result of that listing he sold the restaurant to a Mr. Barnes, who paid $187 for the supplies on hand, nothing for the good will, and agreed to assume the balance due on the chattel mortgage in question. Barnes went into possession on May 4, and on June 3, 1955, he "just picked up and left" and mailed the key to Malley. Barnes testified that when he took possession of the restaurant the equipment was not in good shape; that the refrigeration went out the fourth day he was there; that the exhaust fan motor was burned out; that the bottom of the steam table was rusted out and leaked and he never used it; that some of the other equipment was in bad repair, including the dish washing machine; that Malley told him that he would not accept the responsibility for putting the equipment in working condition; and that at the time he took possession the value of the equipment if sold separate from the restaurant would not exceed $2,000.

The attorney for Mrs. Metz testified that after she bid in the property for $500 he attempted to sell the property for her, that he contacted a number of proposed buyers, that he received three offers running from $1,100 to $1,700, and that he finally sold it for $1,750, which was the best offer he could get.

The first of these representations was as to the value of the equipment itself, and not as to its value as part of and as used in a going business. The second was as to an additional security arising from the reliability and responsibility of the maker of the note. It does not conclusively appear from the evidence that this equipment was worth in excess of $11,000 on November 8, 1955; nor that on that date Sholder was successfully operating the restaurant and that he intended to continue to operate it. The evidence, with the inferences reasonably to be drawn therefrom fully supports a contrary conclusion with respect to both of these representations. It would appear from Malley's own testimony that in an attempt to recoup his loss he paid about $7,000 for this equipment in December, 1952. It could well be inferred from the evidence that the value of the equipment greatly deteriorated thereafter. As holder of the master lease Malley consented to all of the sales that were later made, and gave subleases to several of those buyers. Apparently, he knew that Sholder intended to sell at the time he and Mrs. Metz entered into the escrow at the bank. It could reasonably be inferred that his knowl-

edge of the facts was such that he was not justified in making the representations he made. It could also be inferred from the evidence as a whole, including but not confined to that above summarized, that Sholder was not operating the restaurant successfully on March 28, 1955, and that Malley then knew or should have known that Sholder did not intend to continue to operate it. While there was some contrary evidence the evidence sufficiently sustains the findings that these representations were made, that they were false, and as to the amount of damage.

It is next contended that evidence of the alleged representations and statements made by the defendants was not admissible to establish fraud because it was at variance with the terms of the written contract. It is argued that since the escrow instructions at the bank provided for the assignment of this note and chattel mortgage ''without recourse'' the court erred in receiving any such evidence, even though no objection thereto was made; and that the plaintiff was not relying upon any representations or statements made to her because she knew that she was purchasing the note and mortgage without recourse. While that fact might well bar the plaintiff from suing the defendants on the note itself, it would not bar her from maintaining this action for fraud in selling the note and mortgage to her. This fraud involved the entire transaction, including any written contract there was.

The appellants' further contentions that the respondent did not rely upon any of the statements and representations made to her, and that she waived the fraud if any there was, are based upon either conflicting evidence or other inferences which might have been drawn from some of the evidence. There is no merit in the further contention that the court abused its discretion in refusing to grant a new trial since an affidavit was presented stating that the man who purchased the property from Mrs. Metz for $1,700 later sold part of it for $2,700 and kept two items said to be worth $500. It appears from this affidavit that these fixtures were still located in the original restaurant, and it would also reasonably appear that they were purchased in view of their usefulness in operating a restaurant at that place. The trial date was more than a year after the sale, and the showing of diligence left much to be desired. Under the circumstances, the court was justified in denying the motion for a new trial. The material

findings are supported by the evidence, and we find no reversible error in the record.

The judgment is affirmed.

Mussell, J., concurred.

A petition for a rehearing was denied January 6, 1958, and appellants' petition for a hearing by the Supreme Court was denied February 5, 1958.