**LEE WAY MOTOR FREIGHT, INC.,
and PepsiCo, Inc., Petitioners,**

v.

**Loyd E. WELCH, Claimant–Respondent.**

**No. 63900.**

Supreme Court of Oklahoma.

Nov. 1, 1988.

Albert M. Morrison, Kenneth N. McKinney, Robert L. Roark, McKinney, Stringer & Webster, and Charles C. Green, Turner, Turner, Green & Braun, Oklahoma City, and White & Case, New York City, and Schiff, Hardin & Waite, Chicago, Ill., for petitioner, PepsiCo, Inc.

Lew Gravitt, Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, Oklahoma City, for claimant-respondent.

OPALA, Justice.

Three questions are tendered for our review: [1] Does the out-of-state parent company's guaranty for its local subsidiary—a device necessary to assure the latter entity's continued status as an Oklahoma own-risk employer—make the guarantor liable for payment of benefits awarded *before* the effective date of the guaranty, where the employer's default in payment occurred *after* the guaranty's revocation? [2] Did the Workers' Compensation Court err by including the guarantor—*qua* co-obligor with the now bankrupt own-risk subsidiary who was the employer—as an additional party codebtor in the order certifying the obligation for enforcement in the district

court? and [3] Is an order of the Workers' Compensation Court certifying an unpaid award for entry on the judgment docket required to specify the unpaid amount of the award in default? Following the teachings of *Lum v. Lee Way Motor Freight, Inc.*,[1] we answer the first question in the affirmative and the second in the negative. To the third question we also respond in the affirmative.

Loyd E. Welch [claimant], an employee of Lee Way Motor Freight, Inc. [Lee Way or employer], suffered an on-the-job injury on May 15, 1983 when the truck in which he was a passenger was involved in a collision. Lee Way, then a subsidiary of Pepsi-Co, Inc. [PepsiCo or guarantor], was an Oklahoma own-risk employer. By its January 3, 1984 award the Workers' Compensation Court allowed claimant compensation for temporary total and permanent partial disability totaling $16,905, less special indemnity fund tax of $338.10 and counsel fees of $3,381. This order was later affirmed by a three-judge review panel.

Claimant received all the temporary total disability that was due him; permanent partial disability payments continued until October 15, 1984 when Lee Way ceased all remittances of benefits. Upon claimant's motion, the trial tribunal certified on February 15, 1985 the unpaid balance to the district court in accordance with the terms of 85 O.S.Supp. 1983 § 42[2] and Rule 28 of the Workers' Compensation Court.[3] In that order the trial judge neither reduced to a lump sum nor made a finding with respect to *the specific amount* of the unpaid balance then due on the January 3, 1984 award in default. PepsiCo, the guarantor, who was included in the certification order as an additional party obligor, brought the instant proceeding for corrective relief.

**1.** Okl., 757 P.2d 810 [1988].

**2.** See footnote *infra* note 8 for the pertinent provisions of 85 O.S.Supp. 1983 § 42.

**3.** The terms of Rule 28, Rules of the Workers' Compensation Court, 85 O.S. 1981, Ch. 4, App., are:

"An *application for an order directing an award to be certified for entry on the district court judgment docket* may be heard after notice to the respondent and insurance carri-

 Claimant relies on PepsiCo's guaranty for the employer-subsidiary as the basis for its liability on the award in contest. That guaranty, accepted by the Workers' Compensation Court on July 27, 1984, was revoked by PepsiCo on August 29, 1984. It was hence filed below *after* claimant had secured the award whose portion came to be certified and was revoked *before* Lee Way ceased to meet that adjudicated obligation. The general principles of law which govern the enforceability of PepsiCo's guaranty are stated in *Lum v. Lee Way Motor Freight, Inc.*[4] They apply with equal force to this award and conclusively support the propriety of PepsiCo's inclusion in the certification order as guarantor of Lee Way's compensation liability.[5]

The remaining issue for review is whether the Workers' Compensation Court must certify to the district court a specific amount of the unpaid award there to be enforced. We hold that in this respect the order under review is fraught with two facial infirmities—(1) the finding that Lee Way was in default is ambiguous and indefinite and (2) because the certified order has not reduced the award's unpaid portion to a specific sum, the order cannot be treated as a district court judgment.

## I

## THE TRIAL TRIBUNAL'S FINDING OF DEFAULT IS TOO VAGUE AND INDEFINITE

 The trial court's order certifying the unpaid award of permanent partial disability for execution and enforcement in the district court rests on its finding that:

"2. ... since entering said Order, Respondent has failed to comply herewith in accordance with said Order."

er has been given by mail, or delivered, at least ten (10) days prior to the scheduled hearing thereon, at which respondent and insurance carrier shall be afforded opportunity to show cause why the application should not be granted." [Emphasis added.]

**4.** *Supra* note 1, 757 P.2d at 814–820.

**5.** *Lum v. Lee Way Motor Freight, Inc., supra* note 1 at 814–820.

The quoted language is too vague and indefinite for judicial interpretation. One cannot determine from a four-corners' examination of the quoted text when and in what manner Lee Way had defaulted on its adjudicated compensation obligation. An order based on an ambiguous finding is subject to vacation for further proceedings.[6]

## II

## THE CERTIFICATION ORDER DID NOT, AS REQUIRED BY LAW, CLOTHE THE UNPAID AWARD WITH THE ATTRIBUTES OF AN ENFORCEABLE DISTRICT COURT JUDGMENT

■ The Workers' Compensation Act provides the remedies available to claimants when their employers or the latters' insurers violate the Act's provisions. The terms of 85 O.S. 1981 § 41[7] and 85 O.S. Supp. 1983 § 42[8] prescribe the procedure to be followed upon the obligor's failure to pay compensation due under the terms of an award. An employer's or insurance carrier's ten-day default in payment of a compensation award effects a statutory acceleration of the unpaid adjudicated obligation[9] and the unaccrued installments are at once commuted to a lump sum, thus making the entire unsatisfied obligation immediately due.[10]

■ Upon finding an obligor in default of payment, the Workers' Compensation Court may certify the *award's unpaid amount* and direct that a copy of its certification order be filed in the offices of any

6. *Corzine v. Compress,* 196 Okl. 259, 164 P.2d 625, 626 [1945]; *De Vore v. Maidt Plastering Co.,* 205 Okl. 612, 239 P.2d 520, 521 [1952]; *Cummins v. State Industrial Commission,* Okl., 264 P.2d 721, 723 [1953] and *Leffler v. McPherson Brothers Transport,* Okl., 396 P.2d 491, 493 [1964].

7. The pertinent terms of 85 O.S. 1981 § 41 provide:
 "A. *Awards for permanent partial disability* under Section 22 of this title shall be made for the total number of weeks compensation which the Court shall find the claimant will be entitled to receive ... When the award becomes final, the whole sum or any unpaid portion thereof shall operate as a final adjudicated obligation and payment thereof may be enforced by the claimants.... All awards shall be paid by periodic installments as determined by the Court. Whenever an injured person receives *an award for permanent partial disability,* permanent total disability or death benefits, the injured employee or claimant, *for good cause shown, may have the award commuted to a lump-sum payment* by permission of the Court....
 \* \* \* \* \* \*
 C. All payments shall be made on any award in the manner and form prescribed by this Court not to exceed the weekly rate of compensation specified in Section 22 of this title.... *Failure for ten (10) days to pay any final award or any portion thereof,* as ordered *shall* immediately *entitle the beneficiary to an order* finding the respondent and/or insurance *carrier to be in default* and *all unpaid portions,* including future periodic installments unpaid, *shall immediately become due and may be immediately enforced as provided by Section 42* of this title...." [Emphasis added.]

8. The terms of 85 O.S.Supp. 1983 § 42 provide in pertinent part:
 "If payment of compensation or an installment payment of compensation due under the terms of an award, except in case of appeals from an award, is not made within ten (10) days after the same is due by the employer or insurance carrier liable therefor, the Court may *order a certified copy of the award to be filed in the office of the court clerk and the county clerk* of any county, which award whether accumulative or lump sum shall be entered on the judgment docket of the district court, *and shall have the same force and be subject to the same law as judgments of the district court....* Upon the filing of the certified copy of the Court's award a writ of execution shall issue and process shall be executed and the cost thereof taxed, as in the case of writs of execution, on judgments of courts of record, as provided by the Code of Civil Procedure of the State of Oklahoma...." [Emphasis added.]

9. In *Pruitt v. Mid–Continent Pipe Line Company,* Okl., 361 P.2d 494, 496 [1961], the court noted that when there is an employer's default in the payment of periodic installments adjudged against the employer in a final accumulative award by the compensation court, such unaccrued installments "[b]y force of law ... are commuted to a lump sum so that the entire unsatisfied obligation becomes due at once." See also *Excise Board of Grady County v. Griggs,* 192 Okl. 636, 138 P.2d 829, 831 [1943].

10. See *Pruitt v. Mid–Continent Pipe Line Company, supra* note 9 at 496–497 and *Excise Board of Grady County v. Griggs, supra,* 138 P.2d note 9 at 831. In *Pruitt* the court noted that §§ 41 and 42 of the Workers' Compensation Act facilitate

county clerk and court clerk, as well as be entered there on the judgment docket. A certified unpaid award that has been so reduced to a fixed amount and filed in the district court acquires by force of statute the efficacy of a district court judgment. In short, certification is the statutory procedure for *transforming* an unpaid award in default into an enforceable district court adjudication by clothing the obligor's compensation liability with the attributes of a district court judgment.

When filed in the district court, the certification affords a legal vehicle for enforcement proceedings to be conducted in that forum. Section 42 provides that when the certified award is entered on the judgment docket,[11] execution and other process shall issue in the same manner as for district court judgments.[12]

■ A writ of execution is issued by the court clerk and directed to the sheriff

for levy.[13] Execution cannot issue if the judgment is ambiguous or uncertain in amount.[14] In sum, because in the absence of a fixed amount of the adjudicated obligation *appearing on its face* no judgment can exist in contemplation of law,[15] a certification order must be clothed with the same attributes of certainty as those which are necessary to support execution or other enforcement process upon a district court judgment.

■ At the certification hearing below claimant's counsel informed the trial tribunal of the amount that had been paid for permanent partial disability and of the balance that remained unpaid. Lee Way's counsel had no reason to dispute the figures given to the court. The trial judge nonetheless *refused* to make a finding of the total amount of unpaid award in default, stating that the district court would be the proper forum to effect that determi-

expeditious enforcement of delinquent accumulative awards and enable the beneficiary-worker to compel satisfaction of the aggregate unpaid adjudicated obligation. The aggrieved worker is able to avoid the cumbersome method of resorting to successive proceedings for collection of individual installments as the same accrue and become due. See also *Rucks–Brandt Const. Corporation v. Silver*, 194 Okl. 324, 151 P.2d 399, 403 [1944].

**11.** The terms of 12 O.S. 1981 § 25, the statute in effect when the certified order was issued, provided in pertinent part:
"The judgment docket shall be kept in the form of an index in which the name of each person against whom judgment is rendered shall appear in alphabetical order, and it shall be the duty of the clerk immediately after the rendition of a judgment to enter on said judgment docket a statement containing the names of the parties, *the amount* and nature *of the judgment* and costs...." [Emphasis added.]

**12.** See 85 O.S.Supp. 1983 § 42, *supra* note 8.

**13.** The terms of 12 O.S. 1981 § 731 provide:
"Executions shall be deemed process of the court, and shall be issued by the clerk, and directed to the sheriff of the county. They may be directed to different counties at the same time."
Entries on the execution docket must also show the amount of the judgment. See 12 O.S. 1981 § 26 which provides:

"In the execution docket the clerk shall enter all executions as they are issued by him. The entry shall contain the names of the parties, the date and *amount of the judgment* and costs...."
Execution is the process issued by the court for the enforcement of a judgment or decree. *Mount v. Trammel*, 73 Okl. 96, 175 P. 232, 234 [1918].

**14.** As a general rule, judgment must specify the amount to be recovered before an execution can issue. See *Hall v. Stewart*, 23 Kan. 280, 281 [1880]. This principle is also found in the statutory scheme of other jurisdictions. See, *Roach v. Roach*, 164 Ohio St. 587, 132 N.E.2d 742, 745 [1956]; Arbitration: *Los Angeles, Etc. and Stan's Drive-Ins*, 136 Cal.App.2d 916, 288 P.2d 293, 294 [1955] and *McKay v. Coca-Cola Bottling Co. of Santa Barbara*, 110 Cal.App.2d 672, 243 P.2d 35, 38 [1952].
Our execution statute, 12 O.S. 1981 § 731, *supra* note 13, was adopted from Kansas in 1893 (St. 1893, § 4333); at the time of its adoption it was referenced in our statutory compilation as Gen. St.Kan.1893, par. 4538. A prestatehood construction placed by the Kansas Supreme Court on a statute later adopted in Oklahoma becomes codified with the statute and has the same effect as though it had been expressly carried into the body of our legislative law. See *Matter of Estate of Speake*, Okl., 743 P.2d 648, 650, n. 5 [1987].

**15.** A money judgment must state with certainty the amount to be paid. *Board of Com'rs v. Moon*, 8 Okl. 205, 57 P. 161, 162 [1899].

nation.[16]

■ To give the certified award the force and efficacy of a district court judgment, the trial judge was duty-bound to find the amount that was due and unpaid under the award in default. Although the transcript of the certification hearing reflects undisputed testimony as to the unpaid amount, there is nothing upon the face of the certification order that gives it the quality of a judgment for a sum certain. No legal assessment of an order's sufficiency may be made on the basis of a transcript, because it is the *order alone* which is placed of record in the county clerk's office and on the district court's judgment docket.[17] In short, the award's unpaid amount *must* always be ascertainable from a four-corners' examination of the certified award.

## SUMMARY

The certification order under review does not meet the *sine qua non* standard of definiteness. The trial tribunal correctly ruled that the claimant in this case could invoke the guarantor's secondary liability for Lee Way's compensation obligation in existence when the guaranty was accepted.

Lee Way was properly included in the certification order for district court enforcement. Since Lee Way—the employer—was then in bankruptcy and its obligation to pay the award stood suspended by force of federal law, the guarantor was the only obligor against whom execution could issue. The certification of the unpaid award for execution and enforcement is facially infirm because (a) the trial tribunal's finding that Lee Way was not in "compliance" was too vague and ambiguous to establish its default and (b) the certification order's failure to reduce the unpaid award to an amount certain prevents it from becoming an enforceable district court judgment.

THE ORDER IS ACCORDINGLY SUSTAINED IN PART AND THE MOTION TO CERTIFY IS REMANDED WITH DIRECTIONS TO SPECIFY HOW AND WHEN DEFAULT OCCURRED, INCLUDE IN THE CERTIFICATION ORDER THE UNDISPUTED AMOUNT OF TOTAL ARREARAGE, DETERMINE THE APPLICABLE RATE OF ACCRUABLE INTEREST, AND INSERT THE DATE FROM WHICH INTEREST ON THE CERTIFIED AMOUNT IS TO BE CALCULATED.[18]

---

**16.** The trial judge apparently believed the district court could determine the amount of the unpaid award when it was filed in that forum for execution or other process. The purpose of execution is to enforce a judgment that has already been determined. *Mount v. Trammel, supra* note 13 at 234. Issuance of execution is not an independent action. See *Lahman v. Supernaw,* 47 F.2d 610 [D.C.Okl.1931].

In some jurisdictions enforcement of a compensation award is initiated by filing a certified copy of the award in the district court, where that tribunal then *automatically renders judgment in accordance with the award.* The district court enforcement stage is there not viewed as a separate ancillary proceeding but rather as a continuation of the compensation claim. *Durham Iron Co. v. Durham,* 62 Ga.App. 361, 7 S.E.2d 804, 811 [1940] and *Camp v. United States Fidelity & Guaranty Co.,* 42 Ga.App. 653, 157 S.E. 209, 210 [1931].

In some jurisdictions execution constitutes a method for enforcing compensation awards in lieu of enforcement machinery which might have been given to the compensation tribunal to exercise through its executive officers appointed for that purpose. *Vickich v. Superior Court,* 105

Cal.App. 587, 288 P. 127, 128–129 [1930]. In those systems, when the court clerk enters a judgment on the certified amount and the sheriff levies on the execution, these officials act as instrumentalities of the compensation tribunal and not of the district court. The latter has no authority to modify any proceedings under the award. *Greitz v. Sivachenko,* 155 Cal.App.2d 849, 313 P.2d 922, 923 [1957]. The district court is thus limited to enforcement of the award; its role may not be extended or modified in any manner. *Travelers Insurance Company v. Cole,* 336 S.W.2d 583, 584 [Ky.App.1960].

In some states, much like in Oklahoma, when a certified copy of the award is filed in the district court, a judgment is entered, thereby enforcing collection by legal process in the amount already ascertained to be due. *Parrigen v. Long,* 145 Va. 637, 134 S.E. 562, 563 [1926] and *Travelers Ins. Co., supra.*

**17.** *Only* the certification order constitutes the district court authority for conducting enforcement proceedings upon a compensation award in default.

**18.** See *Parker v. Blackwell Zinc Company,* Okl., 325 P.2d 958, 961 [1958].

HARGRAVE, V.C.J., and HODGES, LAVENDER and SUMMERS, JJ., concur.

SIMMS, J., concurs in result.

ALMA WILSON, J., dissents in part.

KAUGER, J., recused.

ALMA WILSON, Justice, dissenting in part:

I dissent to that part of the majority opinion which concludes that the order on review is incapable of enforcement in the district court. I would hold in conformity with those jurisdictions which consider that the enforcement of a compensation award is initiated by the filing of a certified copy of the award in the district court where that tribunal automatically *renders a judgment* [emphasis mine] in accordance with the award. *See, footnote No. 14 of the majority opinion, citing Durham Iron Co. v. Durham*, 62 Ga.App. 361, 7 S.E.2d 804, 811 (1940) and *Camp v. U.S. Fidelity & Guaranty Co.*, 42 Ga.App. 653, 157 S.E. 209, 210 (1931). The amount sought to be enforced is obviously a definite award figure and is immediately ascertainable in a district court hearing by reference to simple arithmetic. The district court's judgment thereon (not the Workers' Compensation Court judgment) is subsequently tendered for execution. Otherwise the integrity of the district court's enforcement apparatus is impinged by a foreign tribunal. Moreover, I see no reason to adopt a procedure which may encourage delay in the enforcement process of Workers' Compensation awards.