MINOR v. BLANTON et ux.

No. 34454. April 29, 1952.

*243 P. 2d 1008.*

L. B. Yates, Altus, for plaintiff in error.

Robinson & Oden, Altus, for defendants in error.

PER CURIAM. This is an appeal from the district court of Jackson county, and arises out of an action originally filed by Fred Hammond, plaintiff, against C. H. Sleeman et al., defendants, wherein the plaintiff in error and the defendants in error were parties defendant, and cross-petitioners against each other. At the time of the trial of the issues between the plaintiff in error and the defendants in error in the district court, it was agreed that the defendants in error would be referred to as plaintiffs, and the plaintiff in error would be referred to as defendant. The issues between the original plaintiff and all the other defendants, except the plaintiff in error and the defendants in error, were fully determined in the district court of Jackson county, and no appeal is made by any of them. The said trial was held on June 23, 1949, and the court reserved for further consideration and judgment the issues raised between the defendants in error, H. H. Blanton and Juliette F. Blanton, and the plaintiff in error, R. W. Minor. On the same day, June 23, 1949, the following agreement was entered into between the defendants in error and the plaintiff in error:

"Agreement

"This agreement made and entered into this 23 day of June, 1949 by and between H. H. Blanton and Juliette F. Blanton, husband and wife, parties of the first part, and R. W. Minor, party of the second part;

"Witnesseth:

"Whereas, there is now a contract between said parties for the purchase of the North Seventy-five (N 75') feet of Lots Five (5) and Six (6), Block Three (3), Hightower's First Addition to the City of Altus, Oklahoma, and

"Whereas, there has arisen certain liens claimed against the property beyond the contract price of Eighteen Thousand, Five Hundred ($18,500.00) Dollars for said property, and

"Whereas, there is a dispute between said parties as to who is liable to pay said amounts claimed in excess of said Eighteen Thousand, Five Hundred ($18,500.00) Dollars which amount to the sum of Sixteen Hundred Six and 39/100 ($1606.39) Dollars, which amount is being paid by first parties.

"It is agreed by and between said parties as follows, without prejudice of either party to their rights under said contract: that second party will pay to first party the balance of Five Hundred Seventy-eight & 13/100 ($578.13) Dollars due the Jamar Construction Company under its contract with first par-

ties; also pay to first parties Five Thousand ($5,000.00) Dollars agreed to be paid by second party under original contract between said first and second parties; receipt of said sums is hereby acknowledged by first parties; and first parties will deliver deed to second party covering said above described premises, together with assignment of lease contract entered into by and between first parties with The Texas Company, together with all rental checks received by first parties, and also an easement across the premises owned by first parties, as set out in said contract between first parties and second party; and that the question of who is liable for said additional liens claimed is to be determined by the court as soon as the same can be heard, and that if first parties shall recover final judgment against second party for said claims that second party will pay said amounts.

"The judgment recovered by Fred Hammond, an individual doing business as Hammond Concrete Company, Geo. C. Wright Lumber Company, and Bill Starns, an individual, doing business as Bills Sign Shop, are to be assigned to first parties herein, and if first parties recover judgment against second party, then said judgments are to be assigned to second party.

"Witness our hands the day and year first hereinbefore written.

"H. H. Blanton
"Parties of the First Part
"R. W. Minor
"Party of the Second Part."

On the 11th day of July, 1949, the cause was tried between the plaintiff in error and the defendants in error, a jury was waived and the matter tried to the court. The court thereupon took the cause under consideration and took the matter under advisement, and thereafter, on the 7th day of September, 1949, rendered judgment in favor of the defendants in error and against the plaintiff in error. The judgment was in the amount of sixteen hundred six and 39/100 ($1,606.39) dollars, with interest at 6 per cent per annum from September 7, 1949. From this judgment the plaintiff in error has perfected this appeal.

Defendants in error were the owners of the north seventy-five (N. 75') feet of lots five (5) and six (6), block three (3), Hightower's First Addition to the City of Altus, Oklahoma. Defendants in error did, on the 2nd day of December, 1947, enter into a contract with The Texas Company, a corporation, for the leasing of said premises and the erection of a filling station thereon. The lease was for a long period and was subject to the erection thereon of a filling station, in accordance with the specifications prescribed by The Texas Company. Defendants in error experienced some difficulty in complying with the ordinances of the city of Altus in getting the consent of property owners. Defendants in error had entered into preliminary negotiations with the contractor for the construction of said filling station, in accordance with said specifications. Plaintiff in error offered to purchase said lots from defendants in error for the sum of $5,000 but the parties were advised that a new contract as favorable could not be obtained from The Texas Company, by reason of the fact that the policy of the company had changed. The plaintiff in error did not want to purchase the property unless the filling station could be built. It was determined that if the filling station were erected that it was less likely that an injunction would be filed against the defendants in error than against the plaintiff in error. Thereupon, on July 15, 1948, the defendants in error entered into a contract with plaintiff in error, which is as follows:

"Contract

"This contract made and entered into this the 15th day of July, 1948 by and between H. H. Blanton and Juliette F. Blanton, husband and wife, parties of the first part, and R. W. Minor, party of the second part;

"Witnesseth:

"Whereas, it is agreed that first parties are the owners of the North Sev-

enty-five (75′) feet of Lots Five (5) and Six (6), Block Three (3), Hightower's First Addition to the City of Altus, Jackson County, Oklahoma, and said first parties have entered into a lease contract with The Texas Company, a corporation, dated the 2nd day of December, 1947, providing for the leasing of the above described premises and the erection of a filling station thereon; and said first parties have further entered into, or contemplate the entering into an agreement with Jamar Engineering and Construction Company for the erection of filling station to the plans and specifications of the Texas Company upon the above described premises.

"It is understood and agreed that the said first parties do hereby agree to sell and deliver to second party the above described premises and to assign to second party all their right, title and interest of every nature in and to the lease agreement entered into by and between first parties and The Texas Company, for and in consideration of the sum of Five Thousand ($5000.00) Dollars and the performance of the hereinafter set out agreements.

"It is understood and agreed that first parties will place in escrow in the First National Bank of Altus, Oklahoma warranty deed conveying the above described premises to second party, together with copy of this contract, all to be held by said bank until the building contract entered into by and between first parties with the Jamar Engineering and Construction Company has been completed and said filling station completed in accordance with the plans and specifications of The Texas Company; then said bank shall be authorized and directed to deliver said deed to said second party upon his payment to first party of said deed to said second party upon his payment to first party of said Five Thousand ($5000.00) Dollars.

"It is further understood and agreed that first parties will complete the building contract with the Jamar Engineering and Construction Company and that second party will make the payments necessary to be made under said building contract, as and when the same are due as provided by said contract.

"It is further understood and agreed that if the erection of said filling station is permanently enjoined by any court action that said second party shall not be obligated to complete the terms of this contract, but that first parties will refund to him all funds and moneys paid by him under said contract and this contract shall be at an end, and that said first parties will defend any attempt to enjoin the erection of said filling station at their own expense.

"It is further understood and agreed that second party shall have the right at any time should he so desire to pay said Five Thousand ($5000.00) Dollars and to receive said deed and assignment of lease contract and building contract from said first parties, provided that second party goes ahead and completes the building of said filling station.

"It is further understood and agreed that as a part of the consideration herein that first parties will execute recordable easement to the second party to construct sewer and other utilities lines along the east side of the South Sixty-five (65′) feet of Lots Five (5) and Six (6), Block Three (3) Hightower's First Addition to the City of Altus, Oklahoma, providing that said lines are constructed in compliance with the regulations prescribed by the City of Altus.

"Witness our hands the day and year first hereinbefore written.

"R. W. Minor
"Juliette F. Blanton
"Parties of the First Part
"H. H. Blanton
"Party of the Second Part"

Subsequent thereto, on the 17th day of July, 1948, a building contract was entered into between the contractor and the defendants in error. This contract was submitted by the contractor and was redrawn and modified by the attorney for the plaintiff in error, who conducted the negotiations for the building contract, but the contract was executed by the defendants in error.

It was the position of the defendants in error that, in accordance with the said contract of July 15, 1948, the plaintiff in error took the proposed contract

with the contractor and had his attorney redraw the same and then entered into a conference with the contractor, and that the contract with the contractor was merely carried in the name of the defendants in error, and that this was, as was provided for by the said contract of July 15, 1948, which provided merely for the defendants in error to enter into such contract and that the plaintiff in error would make all payments necessary to be made under said building contract as and when the same are due, as provided by said contract. That the contract provided for payments of 80 per cent of the value of the work and materials in the building or stored on the site during the previous month. That, thus, plaintiff in error was permitted to withhold 20 per cent until the completion of the project. The contract of July 15, 1948, also provided that if the erection of the filling station was permanently enjoined by any court action, plaintiff in error would not be obligated to complete the terms of the contract and all moneys would be refunded to him. It was the contention of the defendants in error that such was the primary motive for holding the $5,000 purchase price. The plaintiff in error took over the contract from every practical standpoint and made the payments, as therein provided, except plaintiff in error, apparently, overpaid and did not retain the 20 per cent of the contract price. The plaintiff in error had paid, at the time of the completion of the building, all of the $13,500, except $578.13, and had not retained fully 20 per cent, as the contract provided. The plaintiff in error contended and contends that the said contract of July 15, 1948, provided, in effect, that the defendants in error were to cause to be constructed the filling station at the contract price of $13,500, and would be liable for any excess cost. This language, or, substantial language to this effect, is not in the contract. Plaintiff in error places one construction on the contract and defendants in error place a different construction thereon. In construing ambiguous written instruments, the court must place itself, as far as possible in the position of the parties, when the contract was entered into, and consider the instrument itself as drawn, its purposes and the circumstances surrounding the transaction, and, from a consideration of all the elements, determine upon what sense or meaning of the terms used their minds actually met. This was the holding of this court in American National Bank v. Hensley, 170 Okla. 109, 39 P. 2d 34. This the trial court did. The plaintiff in error had the full control of all payments under the building contract and the full obligation to pay the contractor for constructing the building. The plaintiff in error was not obligated to pay beyond 80 per cent, and therefore, all such payments and the judgment of when to pay and how much to pay was solely with plaintiff in error. Plaintiff in error paid out all of the $13,500 contract price, except $578.13. The amount necessary to satisfy the liens, over and above the $13,500, was this $578.13, plus $1,606.39 additional. The trial court correctly held that there was nothing in the contract which obligated defendants in error to underwrite the cost of the construction of the building. This is the correct conclusion, taking into consideration all of the facts and circumstances and the conduct of the parties and the language of the contract.

"A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." 15 O. S. 1941 §152.

"A contract may be explained by reference to the cercumstances under which it was made, and the matter to which it relates." 15 O. S. 1941 §163.

"If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." 15 O. S. 1941 §165.

"In construing ambiguous written instruments, the court must place itself, as far as possible, in the position of the parties when the contract was entered into, and consider the instrument itself as drawn, its purposes and the circumstances surrounding the transaction, and, from a consideration of all these elements, determine upon what sense or meaning of the terms used their minds actually met." American National Bank v. Hensley, 170 Okla. 109, 39 P. 2d 34.

After considering all the facts and circumstances and the evidence, the trial court held for defendants in error. The judgment of the trial court was correct.

The judgment of the trial court is, therefore, affirmed.

This court acknowledges the services of Attorneys Merle G. Smith, Gordon Bierer, and Hugh Adams, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

HALLEY, V.C.J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.