Ronald LUM, Claimant–Petitioner,

v.

**LEE WAY MOTOR FREIGHT, INC.,**
**Own–Risk Employer, and PepsiCo, Inc.,**
**as Guarantor for the own-risk employ-**
**er, Respondents.**

No. 64213.

Supreme Court of Oklahoma.

Nov. 10, 1987.

Rehearing Denied June 21, 1988.

James G. Grennan, Messrs. Greenan & Faulkner, Oklahoma City, for petitioner.

Kenneth N. McKinney, Robert R. Roark, Messrs. McKinney, Stringer & Webster, Charles C. Green, Messrs. Turner, Turner, Green & Braun, Oklahoma City, for respondent-PepsiCo, Inc.

OPALA, Justice.

Two issues stand tendered for our review: [1] Does the parent company's guaranty, statutorily required to preserve its subsidiary's status as an own-risk employer, make the guarantor liable for payment of benefits awarded *before* the effective date of the guaranty, where the employer's default in payment occurred *after* the guaranty's revocation? and [2] Did the Workers' Compensation Court commit error in refusing to include the guarantor—*qua* co-obligor with the now bankrupt own-risk employer—in the order certifying the commuted obligation for enforcement in the district court? We hold that the guarantor's promise under review is not to be treated as governed by *strict* principles found in the private law of guaranty, but instead, its breadth must be measured by rules applicable to a *statutory undertaking given pursuant to the terms of 85 O.S.1981 § 61(d)* [1] *and Rule 35.* [2] Our pronouncement answers both questions in the affirmative.

I

## THE ANATOMY OF INSTANT CONTROVERSY

On March 27, 1982 claimant, an employee of Lee Way Motor Freight, Inc. [Lee Way], suffered an on-the-job heart attack. Lee Way was then a subsidiary of PepsiCo, Inc. [PepsiCo or guarantor] and was an own-risk employer. On August 9, 1983 the

---

1. See footnote 27 *infra* for the pertinent text of 85 O.S.1981 § 61(d).

2. For the provisions of Rule 35, Workers' Compensation Court Rules, 85 O.S.1981, Ch. 4, App., see note 5 *infra*.

Workers' Compensation Court awarded claimant compensation for temporary total disability and 75% permanent partial disability.

Claimant received regular payments until November 9, 1984 when Lee Way ceased to comply with the orders for payment of compensation benefits. Upon claimant's motion, the trial tribunal on February 14, 1985 commuted the unpaid balance of the award entered on August 9, 1983 to a lump sum ($21,617.66) and authorized its certification to the district court in accordance with the terms of 85 O.S.Supp.1983 § 42 and Rule 28 of the Workers' Compensation Court.[3]

In his motion to commute and certify the award, claimant sought the inclusion of PepsiCo, the guarantor, as an additional party-obligor. Because he did not succeed in this effort, claimant appealed to the three-judge review panel for modification that would add PepsiCo. After the review panel refused to modify the trial judge's order, claimant brought the instant proceeding for corrective relief.

Claimant relies on the guaranty executed by PepsiCo as the basis for PepsiCo's liability. That guaranty, submitted to the Workers' Compensation Court on July 27, 1984, was revoked by PepsiCo on August 29, 1984. It was filed below *after* claimant secured his initial award and was revoked *before* Lee Way ceased to meet its obligation.

## II

### THE HISTORY OF LEE WAY'S STATUS AS AN OWN–RISK EMPLOYER

Prior to the guaranty's effective date the Workers' Compensation Court had approved renewal of Lee Way's 1982 and 1983 applications for a permit to carry its own-risk insurance. For at least those two years the trial tribunal found that Lee Way qualified in its own right as an own-risk employer under the provisions of 85 O.S. 1981 § 61(d).[4] Guaranties by its parent company, PepsiCo, or by any other third party, were neither offered nor sought as a prerequisite for obtaining own-risk status.

It was not until June 8, 1984 that the Workers' Compensation Court notified Lee Way by letter that its status as an own-risk employer could be maintained *only if* PepsiCo would provide the court a written guaranty for any liabilities that Lee Way "may incur" under the Workers' Compensation Act.[5] Because the trial tribunal was aware that the completion of the sale/merger of Lee Way to Commercial Lovelace Motor Freight, Inc. was imminent when it informed Lee Way of the guaranty requirement, the court instructed in its June 8, 1984 letter that, upon completion of the divestiture, the new owners would be required to replace the PepsiCo guaranty.

*On July 9, 1984* the trial tribunal entered an *order revoking* Lee Way's status as a self-insured employer on the basis *that it was financially unable to carry its own risk without compensation insurance.* Lee Way timely appealed to the three-judge review panel from the trial tribunal's order revoking its permit as self-insurer. Shortly thereafter PepsiCo submitted its written guaranty for filing in the trial tribunal. The complete text of the guaranty is as follows:

"GUARANTEE [sic]

*To enable the continuing compliance by Lee Way Motor Freight,* Inc., a Dela-

---

3. Rule 28, Workers' Compensation Court Rules, 85 O.S.1981 Ch. 4, App.; see footnote 28 *infra* for the pertinent provisions of 85 O.S.Supp.1983 § 42.

4. See footnote 27 *infra* for the pertinent text of 85 O.S.1981 § 61(d).

5. Such a guaranty is required by Rule 35, Workers' Compensation Court Rules, 85 O.S.1981, Ch. 4, App., which states in pertinent part:

"* * * Any subdivision or subsidiary of any employer, which has already been authorized by the court to self-insure, may likewise be separately authorized to self-insure PROVIDED that the subdivision or subsidiary independently meets all of the above qualifications. If the subdivision or subsidiary does not independently meet these qualifications, it may be separately authorized to self-insure PROVIDED that the parent or principal employer guarantees in writing that it will be fully responsible for any liabilities that its subdivision or subsidiary may incur under the Workers' Compensation Act. * * *"

ware corporation, maintaining its principal office at 3401 Northwest 63rd Street, Oklahoma City, OK 73116 (herein, Lee Way), *with the terms and conditions of Own Risk Permit* No. 12176 issued Lee Way by the Workers' Compensation Court of Oklahoma, and to induce the Workers' Compensation Court of Oklahoma to withdraw and annul it Order dated July 9, 1984, revoking Own Risk Permit No. 12176, PepsiCo, Inc., a Delaware corporation, maintaining its world headquarters at Purchase, New York, the owner of all of Lee Way's issued and outstanding capital stock, hereby guarantees the payment of any and all awards and judgments granted by the Workers' Compensation Court of Oklahoma to any Lee Way employee covered by the terms of the Oklahoma Workers' Compensation Act (85 O.S.A. § 1, *et seq.*) or the amounts ordered by the said Oklahoma Workers' Compensation Court to any other person, firm or corporation arising out of any Workers' Compensation claim made by any such Lee Way employee.

PepsiCo, Inc. hereby agrees that this guarantee [sic] will remain in full force and effect from the date hereof until such time as PepsiCo, Inc. shall provide written notice to the Oklahoma Workers' Compensation Court that said guarantee [sic] is no longer in force and effect.

Dated at Purchase, N.Y., this *27th* day of July, 1984. * * * " [Emphasis added.]

The appeal from the trial tribunal's order revoking the own-risk permit was never set for hearing. Instead, the tribunal was informed by an August 9, 1984 letter that Lee Way had obtained insurance coverage effective August 6, 1984. Then, PepsiCo notified the court by its August 29, 1984 letter that it was revoking its guaranty effective immediately.

Subsequently, on February 27, 1985 Lee Way Motor Freight, Inc. merged with Commercial Lovelace Motor Freight, Inc. into another entity called Lee Way Holding Co. On March 7, 1985 Lee Way Holding Co. filed a voluntary petition in bankruptcy for Chapter 11 reorganization.

■ The question dispositive of this controversy is whether PepsiCo—as guarantor—is legally subject to inclusion in the certification order where (a) the unpaid benefits certified for enforcement were awarded *before* the effective date of its statutory guaranty and (b) the employer defaulted on payments *after* that guaranty had been revoked.[6]

### III

### THE BREADTH OF PEPSICO'S GUARANTY MEASURED SOLELY BY THE PRINCIPLES OF GUARANTY LAW

The guarantor's obligation under § 61(d) of the Workers' Compensation Act bears the earmarks of a statutory undertaking and some private contractual characteristics. Considering the former aspects alone, we hold that the challenged guaranty was intended to operate retrospectively.

■ A guaranty is a promise to answer for the debt, default or miscarriage of another person.[7] A guarantor has a collateral obligation which is independently and separately enforceable from that of the principal debtor or obligor.[8] Under Oklahoma law a guarantor is secondarily liable. His obligation is conditioned upon default by the principal debtor or obligor.[9]

---

6. The dispositive issue here clearly was within the trial tribunal's cognizance. While the Workers' Compensation Court has no jurisdiction to determine controversies over contractual rights between an employer and its insurance carrier (or guarantor), it is required to resolve *all issues which affect a worker's claim to benefits. Rex Truck Lines, Inc. v. Shaw*, Okl., 455 P.2d 297, 301 [1969]. The scope of PepsiCo's liability under its guaranty for the bankrupt employer bears directly upon the claimant's right to enforce his award and hence formed an issue cognizable by the Workers' Compensation Court.

7. 15 O.S.1981 § 321 and *Rucker v. Republic Supply Company*, Okl., 415 P.2d 951, 953 [1966].

8. *Riverside Nat. Bank v. Manolakis*, Okl., 613 P.2d 438, 441 [1980].

9. *Warner v. Federal Deposit Insurance Corporation*, 605 F.Supp. 521, 530 [W.D.Ohio 1984].

■■■ A guaranty is deemed continuing (a) if it contemplates a future course of dealing, not limited to a single transaction, for an indefinite period of time or (b) until it is revoked.[10] Liability under a continuing guaranty is deemed continuing until it is revoked where there are no express terms in the instrument specifically limiting the duration of the guarantor's responsibility.[11] Nevertheless, a continuing guaranty may be revoked and future liability ended when the guaranty contract has no definite time to run.[12] A guaranty is deemed unconditional unless its terms import some condition precedent to the guarantor's liability.[13]

There is no dispute that the PepsiCo guaranty was continuing and capable of being revoked by the guarantor so that claims arising after its revocation would not be within its terms. The pivotal question here is whether the guaranty had a *retrospective sweep that embraced within its ambit benefits awarded before the execution of the instrument and its filing in the Workers' Compensation Court.*

■■■ The obligation of a private-law guarantor is purely contractual. The meaning of the written contract is controlled by the intent of the parties at the time they entered into the agreement. To determine that intent an inquiry must focus on the precise terms of the guarantor's undertaking and the extent of his promise.[14]

■■■ Intent is to be collected from the whole instrument. Where the language is clear and explicit, its purpose and meaning must be ascertained from the face of the instrument without resorting to ex-

trinsic evidence.[15] If the guaranty's language is ambiguous, the court must place itself, as far as possible, in the position of the parties when they contracted and must consider the circumstances surrounding the transaction and its purposes in addition to the instrument as drawn.[16] Whether a contract is ambiguous so as to require extrinsic evidence or whether the language is ambiguous and hence permits consideration of surrounding circumstances are questions of law for the court.[17]

Claimant argues that the plain language of the guaranty stating that PepsiCo

"... guarantees the payment of any and all awards and judgments granted by the Workers' Compensation Court of Oklahoma to any Lee Way employee covered by the terms of the Oklahoma Workers' Compensation Act (85 O.S.A. § 1, *et seq.*) or the amounts ordered by the said Oklahoma Workers' Compensation Court to any other person, firm or corporation arising out of any Workers' Compensation claim made by any such Lee Way employee. * * * "

unconditionally guarantees payment of *all compensation awards made before the revocation of the guaranty.* Claimant contends that the guaranty is "continuing" and "unconditional" since there are no express conditions precedent in the instrument. Claimant concludes that PepsiCo must be held liable retrospectively.

PepsiCo calls our attention to the same language. It argues that the text operates prospectively and guarantees only payment of compensation benefits awarded *after* the guaranty was executed and *before* it was revoked. According to PepsiCo, the guar-

10. 15 O.S.1981 § 337 and *Rucker v. Republic Supply Company, supra* note 7.

11. 15 O.S.1981 § 336 and *Rucker v. Republic Supply Company, supra* note 7.

12. *Central Surety & Ins. Corporation v. Richardson,* 183 Okl. 38, 80 P.2d 663, 666, 668 [1938].

13. 15 O.S.1981 § 331 and *Rucker v. Republic Supply Company, supra* note 7.

14. *Riverside National Bank v. Manolakis, supra* note 8.

15. *Rucker v. Republic Supply Company, supra* note 7.

16. *Minor v. Blanton,* 206 Okl. 382, 243 P.2d 1008, 1016 [1952]. In *Colorado Milling & Elevator Co. v. Chicago, R.I. & P.R., Co.,* 382 F.2d 834, 836 [10th Cir.1967] the court held that surrounding circumstances may be considered even when there is no ambiguity in the language used.

17. *Shepherd v. French,* Okl.App., 612 P.2d 727, 729 [1980].

anty indicates that the scope of PepsiCo's liability under its guaranty is governed by the provisions of the Workers' Compensation Act which should be read into, and become part of, the guaranty. PepsiCo also asserts that liability under the Act is accident-based, with its key coverage provisions triggered by the point in time when the harmful event takes place. PepsiCo's position is that it guaranteed only awards arising from injuries sustained within the period during which the guaranty was on file and remained unrevoked. This is also, PepsiCo urges, what the trial tribunal intended by its June 8, 1984 letter that requested PepsiCo to assume responsibility for liability Lee Way "may incur while the sale was being completed."

In case of doubt, a guaranty is to be construed most strongly against the guarantor.[18] The undertaking of a surety for hire or a guarantor who has a personal interest in the matter out of which the obligation arose must be construed against the promisor.[19] Clearly, PepsiCo was under no obligation, statutory or otherwise, to file its guaranty in the trial tribunal. The guaranty was actuated by PepsiCo's "personal interest" in preserving Lee Way's self-insured status until divestiture could be completed. Nevertheless, one's burden may not be judicially enlarged by imposing on the obligor a sweep of liability which cannot be fairly said to have been assumed under a permissible interpretation of the contractual promise.[20]

Given these general principles of private-law guaranty, we conclude and hold that the PepsiCo guaranty was intended to have a *retrospective as well as prospective effect*. This is so because PepsiCo's undertaking must be deemed to have assumed liability for the payment of benefits adjudged during the *continued life of Lee Way's own-risk permit, including* compensation awarded *before* the execution date of the guaranty.

## IV

### THE BREADTH OF PEPSICO'S GUARANTY AS A STATUTORY UNDERTAKING

After giving the PepsiCo guaranty a private-law assessment, we now pass to discuss its legal effect as a statutory undertaking. The provisions of an Act must be read into the terms of the liability assumed thereunder.[21] Thus the provisions of the Workers' Compensation Act become part of the guaranty and are to be considered even in the absence of ambiguity in its terms. The scope of the guarantor's liability is affected by the text of the Act. One who chooses to stand as a guarantor of an obligation defined by law *may not be allowed to guarantee less than the full extent of the statutorily-imposed liability*.[22]

---

**18.** *First Nat. Bank, Etc. v. Cit. & So. Bank, Etc.*, 651 F.2d 696, 699 [10th Cir.1981] and *Rucker v. Republic Supply Company, supra* note 7.

**19.** *Fuqua v. Tulsa Masonic Bldg. Ass'n.*, 129 Okl. 106, 263 P. 660, 662 [1928].

**20.** *Employers' Liability Assurance Corporation v. Cannon*, 173 Okl. 493, 49 P.2d 103, 105 [1935].

**21.** See *Western Surety Company v. Childers*, Okl., 372 P.2d 214, 216 [1962] involving a statutory bond. See also *Town of Skiatook v. Brummett*, Okl., 387 P.2d 115, 118 [1963] and *Allied Reserve Life Insurance Company v. Cragg*, Okl., 360 P.2d 707, 708 [1961], *cert. denied*, 368 U.S. 831, 82 S.Ct. 53, 7 L.Ed.2d 33 [1961].

**22.** The principles to be applied here are the same as those which govern the undertaking of a statutory surety. The surety on a statutory bond is liable in accordance with the terms of the statute. *Gibson v. State*, Okl., 655 P.2d 1028, 1029 [1982]. A statutory bond must be construed and enforced in conformity to the terms of the statute. *Enid Concrete Pipe & Stone Co. v. Mann*, 174 Okl. 282, 50 P.2d 307, 308 [1935] and *W.S. Dickey Clay Mfg. Co. v. New York Casualty Co.*, 174 Okl. 281, 50 P.2d 325 [1935]. *If the provisions of the applicable statute are broader than the undertaking, the former prevails over the latter.* When the statute requires a bond to be given and a surety undertakes to furnish it, *the obligation imposed by the statute is read into the terms of the bond.* Any terms which are contrary to the policy of the law are to be disregarded as surplusage. *Western Casualty & Guaranty Ins. Co. v. Board of Com'rs*, 60 Okl. 140, 159 P. 655, 659 [1916] and *Bartley v. Bartley*, 171 Kan. 465, 233 P.2d 735, 738 [1951]. If the terms of the bond are broader than those imposed by the statute, excess liability may be enforced if it does not offend public policy and was voluntarily assumed. The general rule is that a bond entered into voluntarily and for a

 The guaranty under review clearly was not a purely private-law obligation. It was given to satisfy a statutory liability and to assist Lee Way in recapturing and maintaining its public-law status as an own-risk carrier. The purpose of the guaranty, as stated on its face, was

"[t]o enable the continuing compliance by Lee Way Motor Freight, Inc., ... with the terms and conditions of Own Risk Permit No. 12176 issued Lee Way by the Workers' Compensation Court of Oklahoma, and to induce the Workers' Compensation Court of Oklahoma to withdraw and annul its Order dated July 9, 1984, revoking Own Risk Permit No. 12176...."

By the unmistakably statutory terms of the guaranty, plainly reflected from its four corners, PepsiCo did, without a doubt, step into the shoes of its subsidiary and thus, in contemplation of the Act, became a co-obligor for benefits awarded before the instrument was filed.

 Under Rule 35, an employer's "[f]ailure to comply with any provision of the Workers' Compensation Act or any of these rules shall be grounds for revocation of the own-risk permit."²³ *Where the purpose of the guaranty is to extend the permit and where continued compliance with all provisions of the Act constitutes a conditio sine qua non of retaining the permit, compliance with the Act's provisions is a necessary ingredient of the guarantor's intended promise.*

There is no express language in Rule 35²⁴ stating that the guaranty is *required* to be retrospective in operation. Though the terms of the guaranty itself are broad, it guarantees "the payment of *any* and *all* awards ... arising out of *any* Workers' Compensation claim made by *any* such Lee Way Employee...." [emphasis added]. There are no express words which specifically indicate that the guaranty is intended to be retrospective in operation. As for the guaranty's duration, the document stipulates only that it

"will remain in full force and effect from the date hereof until such time as PepsiCo, Inc. shall provide written notice to the Oklahoma Workers' Compensation Court that said guarantee [sic] is no longer in force and effect."

 It is well settled that a guaranty will not be construed to have a retrospective effect unless such purpose appears by express words *or necessary implication* to have been the intention of the promisor.²⁵ While the express words of the PepsiCo

---

lawful consideration is valid as a common-law contractual obligation. *State v. Hartford Accident & Indemnity Co.,* 154 Kan. 79, 114 P.2d 812, 816 [1941]. If such bond is not repugnant to law or to its policy, the bond is enforced according to its terms. *Day v. Walton,* 199 Tenn. 10, 281 S.W.2d 685, 691 [1955] and *Bartley v. Bartley, supra* at 233 P.2d 738.

**23.** Rule 35, Workers' Compensation Court Rules, 85 O.S.1981 Ch. 4, App.

**24.** For the pertinent provisions of Rule 35, Workers' Compensation Court Rules, 85 O.S. 1981, Ch. 4, App., which give rise to the guaranty, see footnote 5 *supra.*

**25.** See Arthur Stearns, *The Law of Suretyship,* § 4.10 [5th Ed. by James L. Elder, 1951]. Consistent with this rule, this court in *Sipes v. Ardmore Book & News Co.,* 138 Okl. 180, 280 P. 805, 806 [1929], held that a surety should not be liable for defaults accruing before the execution of a surety bond unless its terms make provisions to that effect. Under Oklahoma law *there is no distinction between suretyship and guaranty. Warner v. Federal Deposit Insurance Corporation, supra* note 9. See also *Central Surety & Ins. Corporation v. Richardson, supra* note 12, which states that the distinction between a contract of guaranty and a contract of suretyship is merely technical.

In *Sipes* several individual defendants had signed a bond which guaranteed to the plaintiff (a book distributor) faithful performance by the primary obligor (a bookseller) of the conditions of a consignment contract. Much like the guaranty here under consideration, the surety contract in *Sipes* stated that the bond would be in full force and effect from the date it was signed until a specified future date. The bookseller was thereafter adjudged to be bankrupt. The supplier later sought a judgment against the bookseller and its sureties for the balance still due, an amount which included the cost of books consigned *before* the bond was executed. The supplier argued that it was the intention of the parties that the bond should cover and include books on hand at the time of the execution. The court found no clause indicating retrospective intent and therefore held that the sureties were liable only for defaults accruing after execution of the bond sued on.

Express words indicating retrospective intent were found in a guaranty in *Western Hardware & Metal Co. v. Nordeen,* 110 Wash. 150, 188 P. 1,

guaranty do not indicate that the obligation was to operate retrospectively, such intent is necessarily implied given the statutory scheme and public policy underlying the Act. The Act's purpose is to provide protection to workers within the limits established by law.[26] When determining doubtful issues that arise under the Act, the necessity of carrying out the underlying public policy must be given great weight.

Employers, within the limits of the Act, are made liable to employees in compensation for personal injuries suffered during the course of their employment. Employers are required by the terms of 85 O.S. 1981 § 61 either to secure the legally-prescribed compensation by insuring its pay-

ment with an authorized insurance carrier or *to furnish "satisfactory proof"* of their ability to pay compensation and to secure the trial tribunal's authorization to operate as a self-insurer or own-risk carrier.[27]

The Act provides remedies available to employees when their employers or insurance companies violate certain of its provisions. For example, 85 O.S.Supp.1983 § 42 sets forth the sole remedy available when there is a failure to pay compensation due under the terms of an award.[28] The statute provides that, if compensation awarded is not paid within ten days after it is due, the court may order the entire unpaid amount commuted to a lump sum award and certify it to the district court.

2 [1920]. The guaranty there in suit stated "[f]or value received I hereby guarantee to save you from loss on account of merchandise sold or to be sold...." The court held that the agreement, by its express terms, covered not only *the merchandise to be sold but also the merchandise already sold.*
Clearly the *Western Hardware* agreement was retrospective. By contrast, the PepsiCo guaranty merely states that PepsiCo "guarantees the payment of any and all awards and judgments granted by the Workers' Compensation Court...." It does not state that PepsiCo guarantees all awards and judgments granted *or to be granted.*
Both the *Sipes* and *Western Hardware* guaranties are distinguishable from PepsiCo's obligation. *Unlike the PepsiCo guaranty, neither of these was a statutory undertaking of liability.*

**26.** *Adams v. Iten Biscuit Co.,* 63 Okl. 52, 162 P. 938, 940 [1917].

**27.** The terms of 85 O.S.1981 § 61(d) provided in pertinent part:
"An employer shall secure compensation to his employees in one of the following ways:
\* \* \* \* \* \*
(d) By furnishing *satisfactory proof* to the Administrator of his financial ability to pay such compensation for himself ..." [Emphasis added.]
Section 61(d) was last amended by the 1986 legislature (Okla.Sess.L.1986, Ch. 222, § 19).
By its guaranty under review PepsiCo became a *§ 61(d) provider of "satisfactory proof"* who saved Lee Way's own-risk status. PepsiCo had an interest of its own in being the § 61(d) obligor in behalf of its subsidiary because an employer who is neither insured by a compensation policy nor qualified as an own-risk carrier *has unlimited liability* under the terms of 85 O.S.Supp.1982 § 12. An insurance policy that would have operated only prospectively could not have saved Lee Way's status as an own-risk

carrier. Simply stated, the PepsiCo guaranty served to shield its subsidiary from the common-law liability of an *unsecured and uninsured* Oklahoma employer. Because PepsiCo (by putting up satisfactory proof) *stepped into Lee Way's shoes* following the trial tribunal's revocation of the latter entity's own-risk status, the scope of PepsiCo's liability must be measured by the norms of public rather than private law.

**28.** The terms of 85 O.S.Supp.1983 § 42 provide in pertinent part:
"If payment of compensation or an installment payment of compensation due under the terms of an award, except in case of appeals from an award, is not made within ten (10) days after the same is due by the employer or insurance carrier liable therefor, the Court may order a certified copy of the award to be filed in the office of the court clerk and the county clerk of any county, which award whether accumulative or lump sum shall be entered on the judgment docket of the district court, and shall have the same force and be subject to the same law as judgments of the district court. \* \* \* "
It should be noted that the common-law remedy in tort, with some defenses being denied by 85 O.S.Supp.1982 § 12, is not available to the claimant here. It avails only to one who sustains an on-the-job injury while employed in a business which remains impermissibly uninsured. At the time claimant sustained his injury *Lee Way was not impermissibly uninsured.* Moreover, once a worker injured on the job proceeds in Workers' Compensation Court against his uninsured employer, whose business is within the purview of the Workers' Compensation Act, and secures an award, an action to recover damages in tort for the same injury is barred by waiver through a prior election of the other remedy. *Pryse Monument Co. v. District Court,* etc., Okl., 595 P.2d 435, 437 [1979].

The Act also affords safeguards to protect workers covered by authorized insurance carriers from losing awarded compensation in the event their employer becomes insolvent or files for bankruptcy. Section 64(c) of the Act provides that "... insolvency or bankruptcy of the employer shall not relieve the insurance carrier from the payment of compensation for injuries sustained by an employee during the life of such policy" and every policy of an insurer authorized to transact workers' compensation insurance shall contain a provision to that effect.[29]

▇▇ Though they are not included in the statutory language of 85 O.S.1981 § 64, own-risk insurers are, by virtue of their permit, authorized to "transact" workers' compensation insurance in Oklahoma much the same as stock companies or mutual associations issuing insurance covering the liability of employers. Their liability for injuries sustained during the life of the own-risk permit is analogous to that of insurance carriers. The insolvency or bankruptcy of the self-insurer does not suspend his liability for awards granted during the life of the permit.[30]

If the guaranty's effect is to place the guarantor in the shoes of the primary obligor upon the latter's default and if the primary obligor defaults on his continuing obligation to pay compensation, then PepsiCo, who sought to extend the life of the permit by guaranteeing payment of all awards and judgments, must step into Lee

Way's shoes and assume the continuing obligation to pay awards granted during the life of the permit. This is the only construction that gives employees of own-risk employers protection equivalent to that afforded employees covered by workers' compensation insurance issued by independent insurance carriers. The effect of requiring a guarantor to extend the permit of a financially unstable own-risk insurer[31] is to provide a protective measure similar to that required of independent insurance carriers.[32]

V

## CHARACTERISTICS DISTINGUISHING GUARANTY FROM INSURANCE PROTECTION

Guarantor equates its guaranty obligation with an insurance policy. It notes that if PepsiCo had not issued the guaranty and if Lee Way's own-risk permit had been revoked, Lee Way may have been required to insure its compensation liability by obtaining an insurance policy from an independent carrier. That policy would have been written for a period defined as running from the date of its issuance to the date of its termination. Compensation awarded prior to its issuance would not be covered.[33]

▇▇ Despite some superficial similarities, contracts of guaranty are distinguishable from contracts of insurance.[34]

---

**29.** 85 O.S.1981 § 64(c).

**30.** The employer is the primary obligor, whether it is a self-insurer or it is insured by an independent carrier. In the event an insurance carrier becomes insolvent, it is the employer who is liable to employees for compensation due under the terms of an award. *Rucks–Brandt Const. Corporation v. Silver*, 194 Okl. 324, 151 P.2d 399, 401 [1944]. "... [I]t was clearly the intent of the Legislature to make the employer primarily liable, and that securing insurance for the payment of awards under the Workmen's Compensation Law does not relieve the employer from liability in case the insurer becomes insolvent." *Atlas Wiring Co. v. Dorchester*, 168 Okl. 337, 32 P.2d 913, 919 [1934].

**31.** Rule 35, 85 O.S.1981 Ch. 4, App., Workers' Compensation Court.

**32.** 85 O.S.1981 § 64.

**33.** Lee Way did, in fact, obtain insurance with a qualified carrier for injuries incurred after August 6, 1984. On August 29, 1984, PepsiCo withdrew its guaranty.

**34.** PepsiCo's argument that liability would not have been retroactive if there had been an insurance contract instead of a guaranty is without merit. The sweep of an indemnitor's liability under an *insurance contract* is different from the obligation of an *own-risk employer.* Extant case law makes a significant distinction between the two forms of liability. A compensation insurer's obligation is fashioned by statutory liability. A guaranty for an own-risk employer is governed by the Workers' Compensation Court's power *under § 61(d)* and by the provisions of the Workers' Compensation Act. With respect

The distinction between the two lies in the nature of the performance promised by the obligor. If the performance is collateral to another's obligation to perform, the resulting contract is a guaranty. If, on the other hand, the performance is not collateral but operates to create a distinctly different legal relationship between the promisor and the promisee, then the resulting contract should be classified as something other than a guaranty. The insurer's obligation to provide indemnity falls under the latter rubric.

■ The agreement here under consideration is a guaranty and the law of insurance indemnity is not applicable. Unlike an insurance policy which would constitute a new and separate obligation for future awards, this is a guaranty of a pre-existing and continuing obligation to pay awards made during the life of the permit.

Lee Way defaulted on its obligation under the provisions of its permit to make payment on an award to the claimant. PepsiCo guaranteed payment of any and all awards granted under the permit so that Lee Way could continue to operate as an employer standing in the status of self-insurer. The claimant is hence entitled to press his claim against the guarantor, PepsiCo, Inc., and PepsiCo—as guarantor—should be included in the order of certification for enforcement of the unpaid obligation.

The trial tribunal should have ruled that the guarantor's secondary liability could be invoked and become a fit subject for inclusion in the certification for enforcement in the district court,[35] because Lee Way was in bankruptcy and its obligation for payment of the award became unenforceable.

Order of the Workers' Compensation Court is vacated and the proceeding remanded with directions to include the guarantor as a legal obligor on the certified award.

DOOLIN, C.J., and SIMMS, WILSON and SUMMERS, JJ., concur;

HARGRAVE, V.C.J., and HODGES and LAVENDER, JJ., dissent.

KAUGER, J., disqualified.

---

to each claim the insurer carries the same liability and can invoke the same defenses as the insured. See *United States Fidelity and Guaranty Co. v. Theus,* Okl., 493 P.2d 433, 435 [1972]. A workers' compensation insurer may be compelled to bear liability in excess of that imposable on a self-assured employer. See, *Jot Davis Welding Service v. Davis,* Okl., 376 P.2d 259 [1962] and *Young v. City of Holdenville,* Okl., 384 P.2d 905, 906–907 [1963] for the effect of our Estoppel Act, 85 O.S.1981 §§ 65.2 and 65.3. The terms of a § 61(d) guaranty are different. One who assists an own-risk employer by furnishing "satisfactory proof" of the employer's financial ability to pay compensation "steps into the status" of a self-risk employer. As a § 61(d)

obligor PepsiCo can never bear liability in excess of that imposable on the employer. The insurer/employer distinction is well settled in Oklahoma's jurisprudence. See *Miller v. Sears, Roebuck & Company,* Okl., 550 P.2d 1330 [1976].

**35.** The Workers' Compensation Court has the power and the duty to determine which entity must bear the responsibility for payment of its awards. *In re Hines,* Okl., 509 P.2d 669, 672 [1973] and *Mid–Continent Casualty Company v. Miller,* Okl., 451 P.2d 932, 935 [1969]; for procedure governing pre-certification hearings, see *City of Tulsa v. Bingham,* Okl., 324 P.2d 854 [1958] and *Pruitt v. Mid–Continent Pipe Line Company,* Okl., 361 P.2d 494, 496–497 [1961].