2011 OK CIV APP 127

**Joseph BORGES, Plaintiff/Appellant,**

**v.**

**Louis WALLER, an individual, Jack Sellers, an individual, Christian Sellers, an individual, and Cajun Concepts, L.L.C., an Oklahoma Limited Liability Company, Defendants/Appellees.**

**No. 108,410.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 23, 2011.

Roger K. Eldredge, Tulsa, Oklahoma, for Appellant.

Kurston P. McMurray, Robert P. Skeith, Tulsa, Oklahoma, for Appellees.

LARRY JOPLIN, Judge.

¶1 Plaintiff/Appellant, Joseph Borges, seeks review of the trial court's order granting the motion for summary judgment of Defendants/Appellees, Guarantors, Louis Waller, Jack Sellers, Christian Sellers, and Cajun Concepts, L.L.C. Borges seeks review of the court's summary judgment order, which determined that Guarantors did not owe Borges for the difference in lease payments, because Borges consented to the modification of the lease, reducing the lessor's monthly rental obligation by $3000. The district court determined the amount guaranteed was subject to change and while Defendants remained obligated under the agreement, the amount of rent was modified

by the parties to the lease and correspondingly so was the amount guaranteed. As a result, the district court determined Guarantors were not liable to Borges for the $3000 per month difference Borges was not able to collect because the lease obligation had been changed. In this accelerated summary judgment review proceeding, Borges asserts the district court's order is erroneous as a matter of law and the summary judgment should be reversed.

¶2 The material facts are not in dispute. On June 3, 2003, Eyes R.C. L.L.C. (Borges' predecessor in interest) entered into a lease agreement with SWS L.L.C. (Original lessee), under which SWS agreed to build and operate a Popeye's Restaurant on real property located in Broken Arrow, Oklahoma. The agreed monthly lease rental was $9000 per month. In conjunction with the lease agreement, four Guarantors (Waller, J. Sellers, C. Sellers, and Cajun Concepts) executed separate lease guarantees, guaranteeing the lease indebtedness.[1]

¶3 Eyes sold the lease and premises to Borges on December 20, 2005. SWS sold its interest to Pop Restaurants L.L.C. (Pop) on June 1, 2007. Pop assumed all of SWS's obligations under the lease. From the point of its purchase in July 2007 until August 31, 2009, Pop paid Borges the $9000 per month rental obligation as per the lease agreement. In 2009, the lease agreement was modified, changing the rent to $6000 per month. Since September 1, 2009, Pop has paid the modified rent of $6000 per month to Borges. The lease was modified without notice to or the participation of any of the guarantors.[2]

1. "Guaranteed Indebtedness" is defined in subsection one (1) of each lease guarantee as follows:

The term "Guaranteed Indebtedness", as used herein, includes: (a) all indebtedness and liabilities (including, but not limited to, the payment of rent) of every kind or character, without limit as to amount, whether such indebtedness, liabilities, and obligations be fixed, contingent, joint, several, or joint and several; (b) all undertakings and obligations by Tenant to be performed pursuant to and in accordance with the provisions of the Lease Agreement; (c) interest on any of the indebtedness and liabilities described in (a) preceding; (d) any and all costs, attorneys' fees, and expenses suffered by Landlord by reason of Ten-

ant's default in payment or performance of the indebtedness, liabilities, undertakings or obligations described in (a) through (c) preceding, or any part thereof; and (e) renewal or extension of the indebtedness, liabilities, undertakings, obligations, costs, or expenses described in (a) through (d) preceding, or any part thereof.

2. Borges asserts that subsection five (5) of each of the lease guarantees does not require notification to the guarantors and that such notification was waived: "... (d) the modification of, amendment to, or waiver of compliance with any terms of the Lease Agreement without the notification of Guarantor (the right to such notification being herein specifically waived by Guarantor)[.]"

¶4 On December 17, 2009, Borges filed his petition in Tulsa County District Court seeking damages for Guarantors' breach of the guarantee agreements executed in conjunction with the lease of the restaurant, claiming it was Guarantors' responsibility to pay the $3000 difference in the amount owed under the 2005 lease and the $6000 amount now paid by Pop since the renegotiation of the original lease terms. Both parties filed competing motions for summary judgment. The district court determined no material facts were in dispute and granted the motion of the Defendants/Appellees/Guarantors, finding that Guarantors' obligation was tied to the terms of the "guaranteed indebtedness" as it was defined in the guarantee agreements and that obligation was subject to change and did change when the lease was modified in 2009. Having reviewed the record on accelerated appeal, we find no errors as alleged and affirm the judgment of the district court.

¶5 An order granting summary judgment relief, in whole or in part, disposes of questions of law reviewable by a *de novo* standard. *Morales v. City of Oklahoma City, ex rel. Oklahoma City Police Dept.*, 2010 OK 9, 230 P.3d 869, 875.

¶6 Plaintiff Borges contends the Guarantors remain obligated for any amount not paid under the terms of the original $9000/month lease. He asserts that any renegotiation between him and the tenant is irrelevant to the obligations of the Guarantors, because the guarantees are separate agreements and the language of the guarantees state that the "obligations under the terms of this Guaranty shall not be released, diminished, impaired, reduced or affected by the occurrence of any one or more of the following events: ... (d)the modification of, amendment to, or waiver of compliance with any terms of the Lease Agreement without the notification of Guarantor[.]" As a result of this language, Borges maintains Guarantors are obligated for any amount up to $9000 not being paid by the tenant.

¶7 Borges' argument fails to acknowledge two imperatives. First, the guarantee agreements are triggered by some kind of default on the part of the tenant, of which there has been none in this case. Second, the guaranteed indebtedness is expressed in terms of what is owed by the tenant to the landlord and is not expressed in terms of a fixed sum of $9000.

¶8 The mechanism under which Guarantors become responsible for the underlying obligations of the principal obligor is default. "A guaranty is a promise to answer for the debt, default or miscarriage of another person. A guarantor has a collateral obligation which is independently and separately enforceable from that of the principal debtor or obligor. Under Oklahoma law a guarantor is secondarily liable. His obligation is conditioned upon default by the principal debtor or obligor." *Lum v. Lee Way Motor Freight, Inc.*, 1987 OK 112, 757 P.2d 810, 814; 15 O.S.2001 § 321.

¶9 The language of the lease guarantee is consistent with this position as well. Subsection four (4) of the lease guarantee provides that the Guarantor shall pay the demand of the landlord upon the default of the tenant in the payment or performance of the guaranteed indebtedness. The lease guarantee does not otherwise provide for payment by the Guarantors to the landlord.

¶10 There is no allegation of default on the part of the tenant in this action. In fact, all parties agree tenant has paid the amounts due and owing to landlord, under both the old and new terms of the lease. Guarantors argue there were several options available to Borges if he wanted to obligate Guarantors for the tenant's arrearages. For example, Borges could have left the rent at $9000, an amount the tenant insisted it could not pay, and declared the tenant in default upon failure to pay. However, Borges chose to renegotiate and in doing so maintained a relationship with his tenant and avoided default. While the renegotiation likely benefitted landlord and tenant in some respects, it prevented the default that would have implicated the secondary obligors.

¶11 With respect to the amount guaranteed, the lease guarantee itself does not support Borges' argument that all Guarantor obligations are tied to the original lease amount of $9000. The definition of the guar-

anteed indebtedness, which is the full extent of the Guarantors' obligation under the guarantees, is not fixed at any certain amount. It is defined in terms of the obligation of the primary obligor, the tenant. While subsection five (5) of the lease guarantee provides that the obligations under the guarantee shall not be diminished, impaired, reduced or affected by the modification of, amendment to or waiver of compliance with any lease terms, the guaranteed indebtedness as it is defined can be no greater than the tenant's obligation, which is now $6000 instead of $9000.

¶ 12 Had the parties to the lease guarantees intended to fix the guaranteed sum at $9000, they could have done so. *Founders Bank and Trust Co. v. Upsher*, 1992 OK 35, 830 P.2d 1355, 1363. However, no fixed amount was recorded in the lease guarantees. In the absence of illegality, this court is not at liberty to change the contract the parties willingly entered into. *Bank of Oklahoma, N.A. v. Red Arrow Marina Sales & Serv. Inc.*, 2009 OK 77, 224 P.3d 685, 700.

¶ 13 With respect to Subsection five (5), the Guarantors are still responsible to the full extent of tenant's obligation and the breadth of the guarantee has not been diminished, reduced or impaired by the modification of the lease. However, with respect to Subsection one (1), the actual amount of the guaranteed indebtedness is no longer the same. The trial court correctly determined that "[t]aking these two passages in conjunction, the contract is properly read to provide that Defendants [Guarantors] have an obligation to guaranty the tenant's payment of rent as provided for by the Lease Agreement, and that, while the obligation to stand as guaranty is not destroyed by the modification of the Lease, the amount being guaranteed is subject to change."

¶ 14 The order granting the summary judgment motion of Defendants (Guarantors) is AFFIRMED.

MITCHELL, P.J., and BUETTNER, J., concur.